RUDOLPH LEHFELDT, Appellant, v. ARNOLD BACHMANN, Appellee.

**WATERS AND WATERCOURSES:** Easement—Evidence—Sufficiency. Evidence reviewed and held insufficient to establish a contract for the construction and maintenance by adjoining land owners of an artificial watercourse.

**WATERS AND WATERCOURSES:** Easement—Degree of Proof, 2 Easements in artificial watercourses at war with the order of

nature should only be established by evidence which is clear and satisfactory.

**EASEMENTS:** Adverse Possession—Use—Claim of Right. Use alone will not establish an easement in real estate. There must be a *claim of right*, independent of use, and with knowledge of such claim on the part of the one against whom the easement is sought to be enforced. (Section 3004, Code, 1897.)

*Appeal from Crawford District Court.*—F. M. POWERS, Judge.

TUESDAY, APRIL 4, 1916.

ACTION in equity to enjoin defendant from interfering with plaintiff in the enjoyment of an alleged easement for the maintenance of a ditch over and across a tract of land owned by the defendant. Upon trial to the court, plaintiff's petition was dismissed, and defendant was granted affirmative relief by injunction restraining plaintiff from interfering with the natural flow of water. The plaintiff appeals.—*Affirmed.*

*J. P. Conner,* for appellant.

*Sims & Kuehnle,* for appellee.

WEAVER, J.—This action was begun in June, 1909, but was not brought to trial and judgment for nearly five years. That counsel were not idle during all these years is demonstrated by the fact that the conflicting claims and demands of the parties have grown and expanded through petition; answer; cross-petition; amendment to petition; amended and substituted cross-petition; amendment to amendment to petition; amendment to answer to amended and substituted cross-petition; amendment to amended and substituted cross-petition; amended and substituted and supplemental answer and cross-petition; and an answer to the amended substituted and supplemental cross-petition. There was more or less fencing with injunctions and counter-injunctions, interlocutory motions and orders, with the result that, if the court has not been "lost in an impenetrable forest," it is at least compelled to break

its way through a very dense thicket, which might well have been avoided with a little more care by counsel in pleading, or by an order of the trial court requiring the issues to be rewritten and stated in a petition, answer and reply—and no more. We shall make no attempt to formally state the substance of the volume of pleadings to which we have been referred, but proceed at once to state those facts which are conceded or are shown without dispute, as well as other material matters which the evidence tends to show, and the conflicting claims of the parties in relation thereto will be developed. as we proceed.

The ownership of the lands, their location and natural slopes, will be better comprehended by reference to the following cut.

The plaintiff is the owner of the lands marked on the plat with the names of his grantors, L. C. Goodrich and E. Nightingale, and defendant is the owner of the smaller tract marked "Not in the deal," west of the Goodrich tract. Most of the water which is the cause of the trouble comes out of the higher lands or hills on the north, through a channel which crosses the highway immediately west of the northeast corner of defendant's lands, continuing south a little west of his east line for a short distance, where it reaches a low and comparatively flat area, and where, if left without interference with natural conditions, it ceases to run in a single defined channel, but scatters and spreads southeast over plaintiff's land in the direction of the Boyer River. In the year 1884, Shaw, Nightingale and Goodrich, then owning the three tracts marked with their names, united in constructing a ditch, which is designated by the witnesses as the "Shaw Ditch," or "Shaw-Nightingale Ditch," beginning at "B" on the north, thence south to "C," and thence east to the river. The northern terminus was on the Goodrich land, just south of the south line of the land now owned by defendant, and the ditch continued south and east, as above mentioned, the entire distance on the Nightingale land, but close to the boundary line. At some time after the

construction of the Shaw ditch, and by some person (neither
time nor person is revealed by the record), a ditch was made
from the point marked "A" on the channel of the stream above
the place where the water radiated or scattered out over the low
lands, thence south to a connection with the north end of the
Shaw ditch.  This ditch was begun on the defendant's land and
continued thereon at a distance of from one to two rods west of

the boundary line all the way until it approached the Shaw land, where, as we understand the record, it opened into a ditch on the east side of the Shaw land, and thence into the Shaw-Nightingale ditch. The purpose of this ditch evidently was to catch the waters coming down the channel from the hills, before they debouched upon the flat lands to the southeast, and carry them west into the Shaw ditch. It appears that, when the Shaw ditch was made, the tract now owned by defendant belonged to some absent or non-resident person who had no hand in that improvement. Defendant's title to his land is traced no further back than to one Johnson, who seems to have acquired the property in 1893. Johnson testifies that, when he bought it, there was a ditch across the east side of this 30 acres, and that, during the time of his ownership, the ditch filled up, and plaintiff reopened it or cleaned it out without objection on the part of the witness. Johnson sold to one Cook, who testifies to the existence of the ditch when he purchased, and says that, during the time he owned the land, the ditch, especially toward its southern end, frequently filled with mud and rubbish. Some of the time he cleaned it out himself, and sometimes the plaintiff cleaned it. Defendant appears to have bought the land about the year 1905. Plaintiff became the owner of the Goodrich land in 1891 and says the ditch in question "was there as it is now." Speaking of himself and the defendant's immediate grantor, he says they both worked in clearing the ditch, and that "this was satisfactory to both of us." Disputes soon arose between plaintiff and his tenant on one hand and the defendant on the other, over the right of the former to keep up the ditch on the land of the latter, and these disputes culminated in the bringing of this action, in which plaintiff alleges his right to maintain the ditch and prays an injunction restraining defendant from interfering with it. Most of the evidence was taken early in the litigation, but for some reason, the issues were not pressed to submission for several years. With the case thus pending, in the year 1913, the plaintiff proceeded to put up a tight

board barrier or fence on the boundary line between his land
and the defendant's land, extending from "B" to "A;" that
is, from the north end of the Shaw ditch to and beyond the
point where the water coming down the channel from the hills
tends to break away and scatter. This barrier he reinforced
with banking, with the evident intention of checking or turn-
ing from his land any water which might escape from the
ditch. This act on his part was pleaded by the defendant in a
supplemental answer and cross-petition, and an injunction
prayed against the maintenance of such obstruction.

The court, as already indicated, found that plaintiff had
acquired no easement for the maintenance of the ditch on
defendant's land, and dismissed the petition, and further
enjoined the plaintiff from interfering with the flow of water
in its natural course.

The principal question raised by the appeal is whether
plaintiff made a case entitling him to equitable relief. In his
original petition, he alleged as the basis of his claim an express
written agreement between one of his grantors
(not naming him) and one of defendant's
grantors (not naming him), while they still
were owners, by the terms of which they
mutually dug, and thereafter, until defendant acquired title
to his land, mutually maintained the ditch in controversy;
and that defendant purchased the land, with notice of plain-
tiff's rights in the premises. A year later, the petition was
amended to show that the then owner of the land now owned
by defendant was not a party to the alleged contract, but that
thereafter, said land came into the ownership of defendant's
grantor, Johnson, who entered into an oral agreement with
plaintiff by which said Johnson and plaintiff should together
keep and maintain the ditch, and that this agreement was kept
and performed by both parties. Plaintiff further alleges that
the intermediate grantees through whom the title passed from
Johnson to defendant concurred in such agreement and united
with him in maintaining the ditch. Later, plaintiff again

1. WATERS AND
WATERCOURSES:
easement: evi-
dence: suffi-
ciency.

amended his petition, alleging anew the making of an express agreement between the parties in interest for the making and maintenance of the ditch.

As we read the record, there is an entire failure of evidence to sustain the allegation that the ditch was originally constructed under or pursuant to any express agreement between the grantors of the plaintiff and the grantors of the defendant. Of defendant's grantors, only Johnson and Cook appear as witnesses; and, though called by plaintiff and testifying in his behalf, neither of them say that they ever had any agreement with plaintiff granting him the right to construct or maintain the ditch. Each swears that, when he bought the land, he found the ditch there, and the showing of his acquiescence therein is confined to the fact that he allowed plaintiff to clean out the ditch without objection.

Even plaintiff himself as a witness does not pretend to say that he ever made or had any agreement with Johnson, as alleged in his pleadings. The extent of his statement on the witness stand is that, while. defendant's grantors, Johnson, Cook and Sonksen, were successively in possession, each joined with him in caring for the ditch. No other witness professes to have any knowledge of such a contract. Can we infer or imply such an agreement from the circumstances? We think not. In the absence of credible testimony to the making of such agreement, it is hardly a reasonable supposition that the owner of land situated as is that of defendant would enter into such a stipulation. His land as it stood in a state of nature had the higher elevation, and he was entitled to have the surface waters upon his premises drain across the land of plaintiff. It is conceivable, however, that in a neighborly spirit he might consent to have a ditch made on the boundary line; but it would be very unusual that such an owner would consent to have his neighbor cross over the line and construct and perpetually maintain an open ditch parallel to the boundary line and from one to two rods there-

2. WATERS AND WATERCOURSES: easement: degree of proof.

from across his premises, thereby removing from the possibility of practical cultivation not only the area occupied by the ditch itself, but also the added area between the ditch and the partition line. This is not the somewhat familiar case where owners of adjoining tracts enter into a joint or mutual enterprise whereby one or more ditches beginning upon the land of one party are, for their mutual advantage, extended into or across the land of the other, an undertaking which, under all ordinary circumstances, the law will protect and encourage. Here, however, the plaintiff, owning a tract of land so situated that it is charged with the burden of receiving and caring for the entire flow and drainage coming down the channel from the hills, is asserting a right to enter upon the higher land of his neighbor and there construct and maintain a ditch to divert this flow and drainage in another direction across the higher land. In other words, the right which he asks the court to establish and enforce is to invert the order of nature and the rule of law which recognizes it, and by a decree in equity change the servient into the dominant estate. It is certainly but right that, before such extraordinary relief is granted, he who asks it be required to establish the facts justifying it by clear and satisfactory evidence.

Nor can we discover any ground upon which to find a title to the alleged easement by adverse possession. The mere fact that plaintiff has used the ditch for a long time—though more than ten years—is not sufficient. Our statute,

3. EASEMENTS: adverse possession: use: claim of right. Code Section 3004, provides that such use is not even competent evidence of the grant of an easement or of a claim of right, but such claim or assertion of right must be established by evidence independent of its use. When we take from plaintiff's evidence all that relates to the matter of the use and enjoyment of the ditch, there is very little left of the showing made by him. If it be claimed that there is proof that the owner of the land knew of such use, it must still be shown, in order to avoid the

effect of the statute, not only that the party claiming the easement had continued in its use for more than ten years with the knowledge of the owner, but it must also further appear that the owner knew that use was adverse under color of title or claim of right. *Preston v. Hull,* 77 Iowa 309; *Friday v. Henah,* 113 Iowa 425; *McBride v. Bair,* 134 Iowa 661; *Zigefoose v. Zigefoose,* 69 Iowa 391. Or, as has been said by us in the *McBride* case, *supra:*

"There must have been a claim of right independent of the user, of which the defendant or those under whom he holds had express notice."

While plaintiff in this case does show a use of the ditch with the knowledge of the owners of the land, there is no testimony, not even by himself, that he ever informed any of the owners that he claimed anything more than a revocable license therefor until after defendant purchased the land in 1905, and trouble arose between the parties, or between defendant and plaintiff's tenant.

Other evidence to which we have made no reference has no tendency to show that the ditch was originally constructed by the mutual act or agreement of the parties or their grantors, or that it was constructed under an express agreement or understanding that the owners of the land now held by plaintiff thereby acquired a perpetual easement for its maintenance.

The decree below was right and it is—*Affirmed.*

Evans, C. J., Deemer and Preston, JJ., concur.