J. P. JONES, Appellant, v. THOMAS PETERSON, Appellee.

**DEDICATION:** Nature and Requisites—Essential Elements—Highways. A dedication of lands for public use, i.e., a public highway, may not be predicated on anything short of deliberate, unequivocal and decisive acts and declarations of the owner, manifesting a positive and unmistakable intention to permanently abandon his property to the specific public use. Evidence reviewed, and held insufficient to establish a dedication against nonresident owners of lands.

PRINCIPLE APPLIED: Duly established and connected highways ran along, or, in an irregular way, through, the south and east forties of a half section. For some 30 years, travel departed, for a part of the distance, from these established roads, and followed higher ground and a shorter route, and the public had done some work thereon. This latter travel had no fixed course. At times, as the road became badly worn, the travel took to the side, and varied as much as 100 feet from the former course. The land was unfenced, except as adjoining owners enclosed their lands. The owners were nonresidents, who had never seen the land and knew nothing about this travel across it, though it was known to the tenants of these owners, and also to an agent (who had no authority to sell). Part of the time, the land was uncultivated, and through the cultivated part, the tenants had left the traveled way open.

*Held,* not sufficient to establish either a dedication or an easement.

**EASEMENTS:** Creation and Existence—Use—Claim of Right—Notice—Evidence—Competency. A claimant to an easement in real estate must not stop at simply showing *use* of the premises for 10 years. He must go further, and, by evidence *wholly distinct from the use,* establish that said use was under a *claim of right* to so use, and that the owner had express notice thereof.

So held in an action wherein effort was made to establish highways by prescription against nonresident owners.

PRINCIPLE APPLIED. See No. 1.

HIGHWAYS: Establishment — Prescription — Notice of Claim of 3 Right—Constructive Notice. Knowledge of an owner's tenants, or of an owner's agent having no power to sell, that the public was using land for highway purposes, cannot be imputed to the owner of the land.

*Appeal from Crawford District Court.—*M. E. HUTCHISON, Judge.

SATURDAY, JANUARY 20, 1917.

ACTION in equity to restrain the defendant, acting as road supervisor, from removing certain fences, and from trespassing upon the lands of the plaintiff. The trial court found for the defendant, and the plaintiff appeals.—*Reversed.*

*Conner & Powers,* for appellant.

*Sims & Kuehnle* and *Andy Bell,* for appellee.

WEAVER, J.—The plaintiff owns the SW ¼ of Section 10, Township 82, Range 39, in Crawford County, and the defendant is supervisor of the road district in which the land is situated. By several acts or orders of the board of supervisors, at various dates before this dispute arose, public roads had been established on and around Section 10, substantially as shown on the following plat, from A to B, thence north to C, east to D, and northeast to G. Another line extends along the entire east side of the section, and another short line, or *cul de sac,* from E to F.

For a considerable period of time, to which further reference will be made, public travel has, to a greater or less extent, followed a path extending from A, at the southwest

1. DEDICATION: nature and requisites: essential elements: highways.

corner of the section, to the northeast and east, along a course roughly marked on the plat by dotted lines, to or near the point E. No claim is made by anyone that this route has ever been condemned or laid out by public authority as a highway; but the defense to plaintiff's action is based solely upon the proposition that said way has become and is a legal highway by prescription, or by actual or implied dedication thereof by the owners of the land to public use. The plaintiff, who is a comparatively recent purchaser of the land, undertook to fence his premises in such manner as to close or obstruct the disputed route to public travel; and, upon the claim that defendant was threatening to, and would if not restrained therefrom, tear down and remove his fences, this suit was brought to enjoin such action.

There is little dispute between witnesses as to most of the essential facts. Plaintiff's land was patented many years ago to one Stewart, a nonresident of Iowa. In the year 1862, Stewart conveyed it to Garret Bosse. Bosse died in 1882, and the title descended to his wife and children. In 1897, the Bosse children, as heirs of their father, conveyed their interest to the widow, Eliza Bosse, who in 1911 conveyed the land to W. H. Cleary, who in turn, and during the same year, conveyed it to plaintiff. All the several owners of the land prior to Cleary were nonresidents of Iowa, and none of them appear to have visited the land, or to have had any direct knowledge or information concerning the premises, so far as related to the location or use of the highways, actual or claimed, existing thereon. There was no attempt to cultivate or make actual use of the land until 1881, when some breaking was done. There appears to have been no enclosure with fences until a comparatively recent period, except as that purpose was effected in part by the fencing of neighboring lands. The line of travel in dispute was doubtless induced by the fact that it saved some distance, as compared with the established road, but more, perhaps, because this route ran along or upon a ridge or higher ground, and with easier grades. Witnesses differ quite largely as to the comparative travel over this route and the established road. One testifying for the defense thinks 95 per cent of the travel takes the ridge road, while another on the same side would not risk an estimate of 5 per cent. There is also much variation in the memory and observation of witnesses as to the width or extent of ground over which the travel spread in crossing the land. Those testifying for the plaintiff, including several who had lived on the land, and others having daily opportunity to see and know the truth, unite very generally in saying that the public "traveled different tracks, and would change from one place to another." "They would travel in one track awhile, and when it got rutty they would make an-

other track." "There were no fences." "In traveling out there, when one road wore out, we made another one." "We rode over the whole country." "The road would be first one way and then another, in 1912. It varied a hundred feet or more." "It is not traveled permanently in any one place. It varies in the neighborhood of 100 feet." "They make a new road and travel it as long as convenient." Such is the uniform effect of the testimony of a half dozen or more witnesses in position to know the facts whereof they speak. It is true that probably an equal number of witnesses testify more or less directly to a different story, saying that the variations of travel, if any, were temporary, and such as were caused by snowdrifts in the winter. Several of them show comparatively slight familiarity with the situation and speak only in indefinite and general terms, and we incline to the view that, on this phase of the issue, the preponderance of evidence is with the plaintiff. But for reasons hereinafter stated, we think the fact either way is not a controlling one.

It is shown for the defendant that, on several different occasions, the road officers have done some grading at different points on the route, though some of the later work of that kind has been done since this controversy arose. It is also true that, where this line of travel crosses cultivated land, the tenants have left the line of travel unplanted, although there is a claim that the same line has not always been observed from year to year. It is doubtless true that, for 30 years or more, a considerable portion of the public travel has been diverted from the public road along or near the disputed path; but the contention by counsel for appellee that it has followed a line not varying "so much as a rod in width," is distinctly not proven. But, taking the evidence on the part of appellee as literally true, we think it falls short of showing a dedication, either express or implied, or a public right acquired by prescription.

Counsel for appellee, evidently appreciating the diffi-

culty of adjusting their case to our statute as it has been construed and applied in our previous cases, have industriously collected and arrayed the decisions of courts of other states; and if we were to look to them alone, it is probable that we should have no great hesitation in affirming the decree below. The statute to which we have referred provides:

**2. EASEMENTS: creation and existence: use: claim of right: notice: evidence: competency.**

"In all actions hereafter brought, in which title to any easement in real estate shall be claimed by virtue of adverse possession thereof for the period of 10 years, the use of the same shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession shall be established by evidence *distinct from and independent of its use,* and that the party against whom the claim is made had *express notice thereof;* and these provisions shall apply to *public* as well as private claims." Section 3004, Code, 1897.

That this provision is applicable to all cases where a claim is made that an alleged highway has become established by prescription, has been many times decided. *State v. Birmingham,* 74 Iowa 407, 408; *Zigefoose v. Zigefoose,* 69 Iowa 391; *Gray v. Haas,* 98 Iowa 502; *Brown v. Peck,* 125 Iowa 624; *Friday v. Henah,* 113 Iowa 425; *O'Malley v. Dillenbeck,* 141 Iowa 186; *McBride v. Bair,* 134 Iowa 661, 664. This statute was first enacted in the Code of 1873, and our decisions prior to that time must be read in the light of that fact.

Nor is there any presumption or inference of a dedication from mere use alone, but there must be some act or word or course of conduct on part of the alleged dedicator fairly indicating his actual intent to give or grant the easement to public use. As said by us in a very recent case:

"The owner's acts and declarations should be deliberate, unequivocal and decisive, manifesting a positive and unmistakable intention to permanently abandon his property to

the specific public use." *De Castello v. Cedar Rapids,* 171 Iowa 18.

See, also, *O'Malley v. Dillenbeck,* supra; and *McBride v. Bair,* supra.

An owner of property should not be held to intend an abandonment or surrender of it to public use on doubtful or unsubstantial grounds, or because of conduct which is entirely consistent with the absence of such intention. There is nothing whatever in the evidence showing that plaintiff or any of his grantors ever contemplated or manifested any purpose to dedicate this road to the public. Indeed, unless they are to be charged with notice because their tenants knew of the travel along this route, it appears very conclusively that, until about the time of the conveyance to plaintiff, in 1911, not one of the prior owners ever saw the land, or knew that people were traveling over it elsewhere than on the duly established roadways. There is no principle of law by which we may impute to the owners the knowledge of their tenants, or even the knowledge of an agent having no authority to sell. *Daniels v. Chicago & N. W. R. Co.,* 35 Iowa 129. To imply a dedication from use by the public, it must be shown that such use was with the knowledge and acquiescence of the owner, and for the period fixed by the statute of limitations as a bar to real actions. *Onstott v. Murray,* 22 Iowa 457; *Manderschid v. City of Dubuque,* 29 Iowa 73. The plea of dedication must be held to be without substantial support in the evidence.

3. HIGHWAYS: establishment: prescription: notice of claim of right: constructive notice.

Concerning the claim of a prescriptive right, as we have already indicated, the proof is clearly short of the standard set for such cases in Section 3004, Code, 1897, above quoted. Giving the evidence its utmost legitimate effect for the defendant, it shows no more than a long continued use of the alleged easement; but this does not fill the requirement that the adverse possession "shall be established by evidence distinct from and independent of the user." Laying aside such evi-

dence, as we are by the statute compelled to do, what is there left to show an adverse possession? Or even if we concede that an adverse possession might otherwise be found, how are we to avoid the effect of the statute that it must further be shown that the landowner had "express notice" of the use, and of the claim of right, if any, under which the public was using the way over his land?

To repeat, the burden of establishing this proposition is upon the defendant. He has not only failed to establish it, but such fact is very satisfactorily disproved.

These conclusions call for a reversal of the judgment below. The plaintiff is entitled to a decree as prayed. The decree may be prepared and entered in this court, or, if not entered within 30 days, the cause will be remanded for a decree in the district court in harmony with this opinion.— *Reversed.*

GAYNOR, C. J., EVANS and PRESTON, JJ., concur.