HENRY OTT, Appellant, v. CHARLES FREESE et al., Appellees.

**EASEMENTS: Permissive Use.** Permissive use of a private right of way for a particular purpose will not, even by continuous use, ripen into an easement by prescription.

*Appeal from Clinton District Court.*—D. V. JACKSON, Judge.

MARCH 11, 1924.

SUIT in equity to establish right of way across land of defendant, and to restrain interference with use of the claimed right of way. On trial, the court dismissed the plaintiff's petition, from which judgment he appeals.—*Affirmed.*

*Wolfe, Wolfe & Claussen,* for appellant.

*W. J. Keefe,* for appellees.

ARTHUR, C. J.—I. The controversy is over a right of way claimed by plaintiff across the land of defendants. Plaintiff is the owner of two adjoining forties, the northwest quarter of the southeast quarter and the southwest quarter of the northeast quarter of Section 33, of a township in Clinton County, Iowa. Defendants are the owners of 30 acres of land adjoining plaintiff's north 40 on the east, being the south 30 acres of the southeast quarter of the northeast quarter of said Section 33. There is a public highway running north and south on the east line of Section 33. The right of way claimed by plaintiff extends from the east line of plaintiff's north 40 across defendants' 30-acre tract to the east line thereof, to the public highway. Plaintiff acquired his land by purchase from Adelheid Dankleff on February 10, 1919. Adelheid Dankleff acquired the land from Albert

Dankleff March 5, 1906. Albert Dankleff purchased the land in 1874. Defendants acquired their 30 acres of land by mesne conveyances from one Frederick Kube, who acquired said land in 1875. It is claimed by plaintiff that, in the year 1875, Albert Dankleff and Frederick Kube entered into an oral contract by which Dankleff was granted a right of way across the 30 acres then belonging to Kube, in consideration of Dankleff's constructing and maintaining a line fence along the west side of his land; that, pursuant to said agreement, Albert Dankleff constructed the fence and placed a gate at the western terminus of said right of way; that Albert Dankleff and his grantees have ever since maintained said fence and said gate, up to the spring of 1920, when the gates at both ends of the claimed right of way were closed by defendants.

Defendants deny the claims of plaintiff respecting the claimed right of way, and allege that they had no notice, either actual or constructive, that there was any claim of right of way across their land; that they had owned and been in possession of the land during the last four years, and that no one had been allowed to drive across the land without their special permission; that their immediate grantor, William Hoker, was in possession of the land for more than ten years immediately prior to their purchase from him; that from the year 1908 no one had been allowed to drive across the 30 acres without the permission of Hoker and themselves; that the occupation of defendants and their grantor, Hoker, of the claimed right of way, had been open, notorious, and adverse for more than ten years.

II. The evidence offered by plaintiff to establish the contract claimed to have been made in 1875 between Albert Dankleff and Frederick Kube was the testimony of Mrs. Mellinger, a daughter of Albert Dankleff's. She testified that, when she was a child 11, 12, or 13 years old, she heard her father, Albert Dankleff, and Frederick Kube talk about a road or right of way across the 30 acres of land, then owned by Kube; that she heard her father say to Mr. Kube, "Well, you will let me drive through your land, all right," and Mr. Kube answered him, "Well, I have not forbid you yet;" that she remembered that her father was to put in the fence along the east side of his north 40, between his land and the land of Mr. Kube, and for that, "he

could have the driveway through Mr. Kube's land up to the road through the farm;'' that her father put in the fence; that, during the 21 years they lived there, they went through a gate and out across the Kube land to the road.

Two township trustees, in the township where the land involved is located, who happened to be on the premises in the year 1920, testified that the matter of right of way was spoken of incidentally, and that Mr. Freese said, in substance, that there was a verbal agreement between the original owners of the land, but that it was not in writing, and was not good.

Plaintiff and two or three other witnesses testified, in substance, that they had traveled across the 30-acre tract at different times, entering a gate at the west end and passing out at a gate at the east end, or vice versa, during some 25 years; that they had seen other parties travel across the land in the same way.

William Hoker, witness for defendants, testified that at one time he was the owner of the Freese farm; that he bought it in 1906; that he occupied the land as the tenant of his father during the four years immediately before he bought it; that he moved onto the farm in 1902, and occupied it until he sold it, in March, 1917, to defendants; that, when one Shocker was a tenant on the Dankleff land, from 1908 to 1910, he told Shocker that he was not going to allow anyone to travel across the land, but that he would give him permission to cross for $4.00 a year; that, after Shocker left the Dankleff farm, Rapp came on as a tenant, and he allowed Rapp to cross the land on the same terms on which he granted Shocker the privilege of crossing, and that Rapp continued to cross the land under that agreement for three years, until 1913, and then he, Hoker, notified Rapp that there was to be no more travel across the land; that, from that time, 1913, until he sold the land to Freese, in 1917, no one traveled across the land; that no one had crossed the 30-acre tract since 1908 without his permission, while he owned it; that he knew, when he bought the land, that there had been travel back and forward across the field for years; that, when Hoffman and Rapp and Shocker, tenants on Dankleff's land, were passing through the field over his land, people who had any business dealings with them went in and out, until he closed it up.

William Shocker testified that he occupied the Dankleff land

as a tenant for two years, moving on in 1908; that he crossed the Freese land, then owned by Hoker, under an agreement with Hoker to pay him $4.00 a year for such privilege.

William Rapp testified that he occupied the Dankleff land as a tenant from 1910 to 1920; that he was occupying the farm when Ott bought it; that he crossed the Freese land during the time that he occupied the farm; that, during the first three years, Dankleff owned the farm; that Dankleff told him that, if Hoker would not let him go across his land, he would have to take another road, the north road, to get out; that Hoker told him that he could go across the land if he would pay him $4.00 a year, and that he paid him said amount for crossing the land; that after the three years he did not cross over it; that after the three years Hoker forbade his crossing, and he did not travel across the land any more; that Dankleff told him, when he went onto the land as a tenant of Dankleff's, that there were 30 rods of fence that he would have to keep up as long as he had a road through Mr. Hoker's land, and that, when Hoker took the road away from him, he would not·have to keep up the fence; that Dankleff told him that he would have to make arrangements with Hoker to go across his (Hoker's) land.

Charles Freese testified that he purchased his land from William Hoker, and took possession of it March 1, 1917; that he granted Rapp permission to go through the land upon payment of $4.00 per year, which Rapp paid him; that plaintiff, Ott, passed through the land once after he bought it, without his permission; that, when he bought the land, he did not know that there was claimed to be a road across it; that he never had notice of any road's being claimed across it; that, when he bought the land, it was planted to corn; that there was no beaten track across it; that the first he knew of any claim of road across it was in 1920, when Mr. Ott approached him·about it.

III.   To establish a verbal agreement between Kube and Dankleff, claimed to have been entered into nearly 50 years ago, plaintiff relies upon the testimony of Mrs. Mellinger, which we have set forth.   We think said testimony is not sufficient to establish a right of way by agreement.   Giving to the testimony of Mrs. Mellinger its fullest force and·effect, it is not sufficient to establish an easement or right of way by agreement.   At most,

according to her testimony, Kube granted Dankleff only permission to cross his land. Indeed, all that Mr. Kube said in answer to Dankleff's query, "Well, you will let me drive through your land, all right," was, "Well, I have not forbid you yet." The testimony does not establish the grant of a right of way by agreement. It was only a permissive use of the land for a purpose. Permissive use of a private right of way will not, even by continuous use, ripen into an easement by prescription. *Hagerle v. Beebe,* 123 Iowa 620. The testimony of Shocker and Rapp, both of whom were tenants of Dankleff's, plaintiff's grantor, refutes the theory that Dankleff claimed a right of way over appellees' land. Both Shocker and Rapp testified that, when they made their leases with Dankleff, Dankleff told them that, if Hoker, defendants' grantor, would not allow them to cross the land, they would have to go over another road, which he pointed out, to get to the public road. Both of these witnesses made special agreements with Hoker to cross the land by paying $4.00 per year for the privilege. If the evidence warrants finding that permission to cross the land in question was given by Kube to Dankleff, many years ago, said permission was terminated. The evidence shows, without dispute, that no one has been permitted to cross the land, except by special permission, since 1908; and such adverse possession would defeat the claimed right of way, if such had been originally agreed upon, as claimed by plaintiff. *McAllister v. Pickup,* 84 Iowa 65.

Furthermore, the evidence offered by plaintiff fails to show that defendants, at the time they purchased the land, had notice or knowledge of any agreement for right of way, or any claimed right of way, across their land, as provided by Code Section 3004. The evidence offered to show knowledge on the part of Freese of the claimed right of way is the testimony of the two township trustees who happened to be on the premises in 1920, some four years after Freese had purchased the land. The trustees were not transacting business with reference to a right of way. They were upon the premises in connection with another matter. In a general conversation which arose, someone spoke of the existence of a contract giving a right to pass over the land of Freese, and Freese said, in substance, that it was only a verbal agreement between the original owners of the land

years ago; that it would not hold, as there was no written agreement on record to show it. On the other hand, Freese testified that, when he bought the land, he had no knowledge that a right of way was claimed over the land, and that he had no knowledge that there had been any travel across the land; that, from 1916, when he bought and took possession of the land, until 1920, the only person who traveled across the land was the witness Rapp, who paid him $4.00 a year for the privilege.

We think plaintiff failed to establish that Freese had notice, either actual or constructive, that a right of way was claimed over the land at the time he purchased it. The judgment of the lower court was right, and it is affirmed.—*Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.