Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Appellant, v. Ellen Cross, Appellee.

No. 40612.

JANUARY 13, 1931.

REHEARING DENIED APRIL 11, 1931.

M. F. Condon and Hughes, O'Brien & Faville, for appellant.

Geiser, Donohue & Geiser, for appellee.

WAGNER, J.—The plaintiff, Railroad Company, in its petition, seeks to enjoin the use, by defendant, of an opening under a trestle bridge on the railroad right of way as an under-crossing, or as a means of ingress and egress to and from her premises. It is the plaintiff Company's intention to replace the trestle bridge with permanent construction and to install reenforced concrete pipes adequate for necessary drainage. The purpose of the replacement of the bridge is to promote safety, eliminate fire hazard and reduce the cost of maintenance.

The defendant, in her answer, alleges in substance, that she and her predecessors in title have used the way or opening under said trestle bridge openly, notoriously, continuously, adversely and uninterruptedly for a period of more than ten years last past, and that she has acquired the right to the use of said passage way by adverse possession; that she owns land situated on both sides of the railroad right of way; that she is entitled to a crossing or roadway across the right of way connecting her two tracts of land; that said trestle bridge is inadequate

220

to meet the defendant's present needs, for the reason that the stream which runs under said bridge overflows during the wet season of the year and makes access to the north tract of defendant's land extremely difficult; that defendant has made written demand upon the plaintiff herein to continue to maintain the trestle bridge or opening in its roadbed hereinbefore referred to. She prays that the plaintiff be enjoined from closing said viaduct or obstructing said way, or in any way interfering with defendant's free use of the same, and that plaintiff be required to keep said road and way open and in a proper and passable condition, and that, if the court decrees the right to the plaintiff of obstructing, destroying or closing said passage way through and under its said viaduct, that then and in that event, the plaintiff be required before the obstruction or closing of the same to build, erect and furnish to the plaintiff an adequate and safe crossing across its said right of way, connecting defendant's land on the south side of such railroad right of way with her land on the north side thereof.

The court denied the injunctive relief asked by the plaintiff and dismissed its petition, and decreed that said underground passage way across the plaintiff's right of way from the land of the defendant on the south side of said right of way, to the land of the defendant on the north side of said right of way, be kept open and undisturbed as a passage-way to and from her land lying on the north side of plaintiff's right of way until such time as the plaintiff shall furnish to the defendant, at its own expense, another proper and adequate crossing across its railroad right of way from the land of the defendant lying on the south side thereof to her land on the north side thereof, or from the public street on the south side of plaintiff's right of way to the land of the defendant on the north side thereof and lying adjacent thereto. From this action of the trial court, the plaintiff has appealed.

As found by the trial court, the defendant's real property is located within the corporate limits of the city of New Hampton, but does not constitute a part of the platted portion of said city. Plaintiff's right of way extends generally in an easterly and westerly direction at the point in question, varying a trifle from the northeast to the southwest. Defendant's real estate consists of approximately four acres lying to the north of plain-

tiff's right of way, and a triangular piece containing about one-twentieth of an acre lying south of plaintiff's right-of-way. Only a portion of the triangular piece lies immediately south of the westerly portion of the four acre tract north of the railroad right of way—the remainder of said triangular piece extending to the west. Defendant's property, the railroad right of way, the environments and entire situation are shown by the following plat. The eastern base of the triangular piece to the

I & D Division
Map showing situation at bridge R-248
48-ft. pile bridge.
New Hampton–Iowa

south of the railroad right of way is thirty-five feet wide, and extends north and south. The record discloses that some years ago, one, Boos, was the owner of the four acre tract to the north of the railroad right of way. In 1911, Boos purchased the triangular tract hereinbefore mentioned; in 1918, Russell purchased from the Boos heirs all of said real estate, and received a deed of conveyance, conveying both the four acre tract and the triangular tract, and in 1922, Russell, by a deed of conveyance, conveyed the same to the defendant. The triangular piece has had no particular use; the record discloses that it is covered with slough grass and that, on one occasion, before defendant's ownership, the slough grass thereon was cut and used for hay. The husband of the defendant testified: ''The triangular piece has sometimes had hay on it and I used to burn refuse on it.'' He also testified that the four acre tract is used for a slaughter house, feed lots and storage, and was used for that purpose before the purchase of the same by the defendant. There are situated upon the four acre tract such buildings and improvements as are convenient and appropriate for slaughter house purposes. The railroad trestle bridge is 48 feet long, consisting of three spans of 16 feet each. Underneath the bridge the ground slopes toward the center, so that the center span is the only one that is open. This span provides for the drainage above the bridge. A water course, with well defined channel, known as ''Minnie Creek,'' runs through this opening. Water runs in the channel of the creek during the major portion of the year; and after heavy rains and in the spring the entire opening is covered with water from one to three feet in depth. The clearance between the ground and the top of the bridge is nine feet—not sufficient for the passage of a cattle truck loaded with stock, and the stock are unloaded and driven through the passage way. At the present time, the use of the bridge as a passage way constitutes the only means of ingress and egress to and from the four acre tract. As shown by the plat, the south boundary line of said triangular piece constitutes the north line of a highway or street running east and west. This highway or street lies to the south but not adjoining the railroad right of way. Real estate, consisting of about 4½ acres, owned by one Reich, lies between the street and the railroad right of way. This tract is irregular in shape, about 100 feet wide at the east

end and 35 feet at the west end. The trestle bridge is in bad repair and requires renewal or replacement. To promote safety and reduce maintenance costs, the plaintiff proposes to eliminate the trestle bridge and replace it with two concrete pipes, a 75 inch pipe and a 48 inch pipe—which will be adequate to provide necessary drainage. The eastern boundary of the four acre tract is about 1000 feet from the highway, shown on the plat, which runs north and south, and it is about the same distance from said tract to the next highway to the west. The nearest road or highway to the north of defendant's real property is about one mile; the opening under the trestle bridge has been used as a passage way for more than seventeen years, and by the defendant since the property was acquired by her in October, 1922. In using this passage way, the defendant comes down the street to the triangular piece, then travels north 35 feet across same to the railroad right of way, then on the right of way and under the trestle bridge to the four acre tract. There is no fence on the south side of the railroad right of way. The defendant has been maintaining a fence between the four acre tract and the railroad right of way. The husband of the defendant testifies, that the only thing done toward keeping the passage way in repair was done by himself. It is shown by the record that the railroad company made no objection to the use of the passage way by the defendant and her predecessors. On February 21, 1929, after the commencement of this action, the defendant made written request that the railroad company continue to maintain the bridge and continue to secure to her a way of passage between her two tracts of real estate as heretofore, and as a means of gaining access to said four acre tract.

Has the appellee acquired an easement in the passage way by adverse possession? We answer in the negative. That the defendant is not entitled to an easement or passage way under the trestle bridge by adverse possession, see Schrimper v. C., M. & St. P. R. Co., 115 Iowa 35; Hastings v. C., R. I. & P. Ry. Co., 148 Iowa 390; Whitham v. C., B. & Q. R. Co., 178 Iowa 1296; Section 10175, Code, 1927; Gates v. Colfax Northern Railway Co., 177 Iowa 690; Culver v. Converse, 207 Iowa 1173; Jones v. Peterson, 178 Iowa 1389. Many other authorities could be cited on this proposition. In order to constitute title by adverse possession, the alleged adverse possession must be

under color of title or claim of right. The defendant has no color of title and is not shown by the record to have any claim of right to the same. There is no contractual right between the Railroad Company and defendant, or between said Company and any of her predecessors, as to a passage way. In Hastings v. C., R. I. & P. Ry. Co., 148 Iowa 390, at 396, we declared:

"The only evidence as to the undercrossing through the trestlework of the bridge which existed before the construction of the stone arch was commenced indicates that plaintiff had without objection on the part of the defendant been accustomed to drive his teams and have his cattle pass through such trestlework at one side of the little stream. *Such a permissive use, no matter how long continued, will not in itself ripen into a right to have such opening maintained as a private undercrossing.*" (Writer's italics.)

Similar quotations could be made from the other authorities cited. All that the record discloses is a mere permissive use of the passage way under the bridge by defendant and her predecessors.

Section 10175, Code, 1927, provides:

"In all actions hereafter brought, in which title to any easement in real estate shall be claimed by virtue of adverse possession thereof for the period of ten years, the use of the same shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession shall be established by evidence distinct from and independent of its use, and that the party against whom the claim is made had express notice thereof; and these provisions shall apply to public as well as private claims."

The testimony falls far short of what is required under the aforesaid section of the Code to establish a right of way in the appellee by adverse possession. The testimony establishes only the use of the passageway. There is no testimony independent of the use of any claim of right in the appellee and her predecessors in interest; and even if there were such testimony of a claim of right, there is no independent evidence that the appellant had express notice thereof. See Culver v. Converse, 207 Iowa 1173, where the rights of interested parties, by ad-

verse possession, under Section 10175, Code of 1927, are quite fully discussed, and repetition of what is there said is unnecessary. In view of the authorities, it is quite apparent from the record, that the appellee is not entitled to an easement or passageway at the place in question by reason of adverse possession.

Is the Railroad Company under a statutory duty to construct and maintain a crossing for the defendant, connecting the one-twentieth of an acre south of the railroad right of way with the four acre tract lying to the north thereof? The appellee contends that the Railroad Company is under such duty, while the Railroad Company contends that it is not. Our statute, Section 8011, Code, 1927, on the subject, is as follows:

"When any person owns land on both sides of any railway, or when a railway runs parallel with a public highway thereby separating a farm from such highway, the corporation owning or operating such railway, on request of the owner of such land or farm, shall construct and maintain a safe and adequate farm crossing or roadway across such railway and right of way at such reasonable place as the owner of the land may designate, and shall construct and maintain a cattle guard on each side of such roadway where it crosses the track, connected by wing or cross fences to the fences on each side of the right of way."

It will be noted, that the statute provides:

"When any person owns *land* on both sides of any railway, or when a railway runs parallel with a public highway thereby separating a *farm* from such highway, the corporation owning or operating such railway, on request of the owner of such *land or farm,* shall construct and maintain a safe and adequate *farm crossing or roadway* across such railway," etc. (Writer's italics.)

It must be borne in mind, that Boos was the owner of the four acre tract when in 1911 he purchased the triangular piece south of the railroad right of way. It is quite clear that prior to the time of the purchase of said one-twentieth of an acre, Boos could, in no event, have required the railroad company to construct and maintain a crossing, as at that time, he was the owner of real estate on only one side of the railroad right of

way. The railroad right of way does not run parallel with the street or highway to the south thereof, neither does said highway lie adjacent to the railroad right of way; real estate owned by another lies between the highway and the railroad right of way. In no event, can it be asserted, within the meaning of the statute, that the railway separates a *farm* from such highway. It will also be noted, that only a very small portion of the boundary line of the triangular one-twentieth of an acre lies adjacent to the railroad right of way across from, or directly south of, the four acre tract to the north. It is apparent that the value of the one-twentieth of an acre is inconsequential; it produces nothing except slough grass, which, according to the record, was cut on one occasion. If said one-twentieth of an acre were a pond, covered with water year in and year out, it would still be land or real estate. In that event, the owner could construct a bridge of some character from the highway 35 feet in length along its eastern boundary to the railroad right of way. In such situation, would the Railroad Company be under the statutory duty to construct and maintain a "safe and adequate farm crossing or roadway" across its right of way? We think not. As found by the trial court, the real property in question lies within the corporate limits of the city of New Hampton. It is not used as a farm or for farming purposes. The language "When a railroad runs parallel with a public highway thereby separating a farm from such highway" is indicative of a legislative intent to provide a crossing for the use of land used as a farm. The duty imposed by the statute, under all circumstances, coming under the statute, is to construct and maintain a *"farm crossing or roadway."* The quoted language signifies a crossing used in connection with a farm. Indeed, it is apparent from the entire language of the quoted section, that such was the legislative intent. We have not heretofore been required to place a construction upon said section of the statutory law. In Smith v. M. K. & T. Railway Co., 94 Mo. App. 398, 68 S. W. 238, the court had before it for construction a very similar statute and facts somewhat analogous to the situation in the instant case The court in passing upon the question declared:

"It is difficult to say how large a piece of land, cut in two by a railroad should be, in order to entitle the owner to a *farm crossing.* But certainly it is unreasonable to suppose that the

statute was intended to permit a person owning a small tract within the limits of a city, to buy another small tract on the opposite side of a railway, and then compel the latter to put in a crossing, under a statute intended to preserve the convenience of farmers in getting from one portion of their farms to another.'' (Writer's italics)

We cannot escape the conclusion that, under the facts and circumstances as disclosed by the record, there is no statutory duty resting upon the Railroad Company to construct and maintain ''a safe and adequate farm crossing or roadway.''

It is unnecessary for us to discuss the question as to whether or not the appellee is entitled to an easement by necessity. That question is not argued by the respective parties, and under the record is not involved. But see Cassens v. Meyer, 154 Iowa 187; LaPlant v. Schuman, 197 Iowa 466; Teachout v. Duffus, 141 Iowa 466. Neither is it necessary to discuss whether the defendant is entitled to an outlet under Section 7806, Code, 1927, as that is not an issue for determination.

For the foregoing reasons, the judgment of the trial court is hereby reversed.—Reversed.

All Justices concur except FAVILLE, C. J., who does not participate.