WALTER C. GERDTS et al., Appellants, v. NELLIE MULFORD, Appellee.

No. 43941.

648

June 17, 1941.

Hoersch & Hoersch, for appellants.

Thuenen & Thuenen, for appellee.

BLISS, J.—The residence properties are Lots 5 and 6 in Whitaker's 2d Addition to the City of Davenport, Iowa. They front west on Belle Avenue, and extend east 192 feet to a 30-foot alley. Each is 50 feet wide. Plaintiffs own Lot 5 which is immediately to the north of defendant's Lot 6. Adam Boettcher bought Lot 5 in 1892, built upon it and occupied it until his death in 1912. His surviving family occupied the place until

the Boettcher heirs sold it in 1922 to the plaintiff, Walter C. Gerdts, a grandson of Adam Boettcher.

The defendant and her husband bought Lot 6 in 1895 and built upon it in December 1910. They occupied it together until Mr. Mulford died in 1923. Defendant has owned and occupied it since.

Plaintiffs' lot is higher than defendant's and slopes toward it and eastward. Defendant's residence is 6.7 feet from the south line of plaintiffs' lot. The natural terrace on the south boundary of the Boettcher lot was somewhat washed and out of repair in 1911 when the Mulfords desired to make a driveway from Belle Avenue to the rear of their home, a distance of 50 or 60 feet. The space was narrow and they suggested to Boettcher that they would build a retaining wall if they might place it all on the Boettcher lot, just north of his line. Boettcher agreed on condition that he might use the driveway as he needed it. Mulfords built and paid for a brick retaining wall, 7 inches wide, from the front or west lot line, and extending east 81 feet. It is between 2 and 3 feet high at its highest point. They built the driveway to a point just east of the kitchen or back door, and surfaced it with crushed stone or gravel. East of this driveway were cherry and peach trees, bushes and grass. Neither Boettcher, nor his family after his death, used this driveway except to haul in the winter supply of fuel and potatoes. Mulfords built the wall on the line which Boettcher marked out for them. He was mistaken as to the true boundary line, and as a result the south face of the wall at its west end is 4½ inches north of the boundary line. It crosses the line a little farther east, and is 4 inches south of the line at its east end and 81 feet distant from the west lot line. As we understand the record, the driveway now extends to the alley and veers to the south on to defendant's lot in the same degree of variance from the true line. In 1921 the Mulfords bought an automobile and built a garage east of their house and some distance south of their north lot line. They then extended the driveway east to a point north of the garage, and connected it with a driveway south to the garage.

When Gerdts bought his property, he asked the Mulfords if he might use the driveway and they consented. In 1924 or

1925, he turned a workshop or summer kitchen around so that it extended north and south, with the entrance on the south, and used it for a garage. Its west line is about 100 feet from the west lot line, and it is further west than the defendant's garage.

After Gerdts bought the property in July, 1922, he conveyed it to the Davenport Housing Corporation in September, 1922, for financing purposes, and the latter reconveyed it to him in 1927. Tenants occupied the property in the early years of plaintiffs' ownership, and in the spring of 1925 they badly cut up the driveway with heavy hauling. The defendant protested to Gerdts about this misuse of the driveway, and he told her that since he was using the driveway, he felt as though he should pay for part of the expense. He then agreed to pay for paving about 30 feet of the driveway from Belle Avenue back to about the front porch of the house. This he did, at his own expense of $60 in July, 1925. The defendant then surfaced the remainder of the driveway back to and into her garage.

About 2 years after Gerdts made his garage, as stated, he built a brick driveway from it, 9 feet by 30 feet, to connect with the defendant's driveway. From this time until the spring of 1932, he used the driveway. He would back his car down to the driveway and then back it into the driveway connecting with defendant's garage, and then drive west to the street. Some difficulty arose about this and she notified him by letter that she was closing the driveway to him, but would give him time to construct one on his own lot to the alley. He did not do this so defendant put a chain across the driveway just east of plaintiffs' entrance into it, so that he cannot back and turn in the entrance to defendant's garage, but as we understand the record, he may back his car clear to the street if he is sufficiently expert at driving. He states that the contour of the ground and the sharp turn make this difficult. Defendant offered to repay him the money he had spent in 1925 for the paving he put in. He refused to accept it and said that all he wished was "permission to use the driveway."

Plaintiffs filed their petition December 23, 1932, praying the establishment of their right to an easement over and upon this driveway, 6.7 feet wide and 152 feet from the west line of

these lots, and that defendant be enjoined from interference with their use of it. They allege as the basis for the relief asked, an oral agreement with Adam Boettcher, continued acquiescence in the use of the driveway for longer than the statutory period, acceptance of money paid in constructing the driveway, and estoppel in permitting plaintiffs to make their garage and driveway without protest. The trial was concluded May 22, 1935, decree entered May 23, 1936, and appeal perfected September 22, 1936. After eleven continuances by agreement of parties, it was submitted to this court in May, 1941.

I. Under the record, we are satisfied that the agreement with Adam Boettcher was merely a permissive use of the driveway as it was then constructed for a distance of 50 or 60 feet and that neither he nor his family ever used it except for bringing in the heavier household supplies, and that there was never any permanent easement intended. The deed of the heirs to plaintiffs, and their deed to the Housing Corporation make no mention of any rights of any kind in defendant's property. The testimony of a daughter and son of Adam Boettcher falls far short of establishing a permanent easement by agreement or acquiescence. Gerdts and the man who put in the pavement which the former paid for in 1925 are the only other witnesses. The latter's testimony consists mostly of conclusions and is indefinite. The former's testimony does not support the relief he asks for. The trial court found against plaintiffs on all issues and denied them any relief. We are in agreement with the conclusions of law and of fact of the trial court. There is no question that the arrangement was made with Adam Boettcher as stated herein, but neither he nor his heirs ever attempted to transfer even that limited use of the driveway to the plaintiffs. The use of the driveway by the plaintiffs was permissive only and revocable at the pleasure of the defendant, and we think the plaintiffs recognized it only as such. They never made any claim to the defendant of a right to a permanent easement, until the summer of 1932. When he bought the property, he asked the Mulfords if he might use the driveway. He made no demand to use it as a matter of right. The defendant did not act to mislead them. The fact that she did not protest against the reconstruction of a workshop into a garage and the building of a driveway by

652

plaintiffs is not sufficient to constitute an estoppel. She was under no obligation to tell them what use to make of their property, or how not to use it, so long as there was no basis for a permanent easement in her driveway, and they had made no such claim to her.

The law applicable to a case of this kind is well settled. The establishment of an alleged oral gift or grant of a permanent easement in real estate must be by clear, definite and unequivocal testimony. Chicago & N. W. R. R. Co. v. Sioux City Stockyards Co., 176 Iowa 659, 158 N. W. 769; Truman v. Truman, 79 Iowa 506, 509, 44 N. W. 721; Williamson v. Williamson, 4 Iowa 279, 281; Young v. Scott, 216 Iowa 1253, 1254, 250 N. W. 484; Lehfeldt v. Bachmann, 175 Iowa 202, 157 N. W. 456. The plaintiffs have produced no such evidence. Such a contract easement· cannot be established by evidence which is perfectly consistent with a mere naked license only, revocable at pleasure. Hawkeye Portland Cement Co. v. Williams, 213 Iowa 482, 487, 239 N. W. 120.

The fact that they have had permissive use of the driveway over a long period is not sufficient to make their case. As stated in Friday v. Henah, 113 Iowa 425, 427, 85 N. W. 768: "To establish a prescriptive right of way, it is not enough to show user alone. The fact of adverse possession must be established by evidence distinct from and independent of the use, and it must also appear that the person against whom the claim is made had express notice thereof."

·In Young v. Ducil, 188 Iowa 410, 416, 176 N. W. 272, 274, the court said: "Mere proof of use, therefore, is not sufficient. The use may be permissive only. To invest the plaintiff with a right to a continued use, he must show something more than use for the statutory period, and two things more are essential: (1) That he claimed an easement as his right, and this must be established by evidence distinct from and independent of its use; and (2) that the party against whom the claim is made had express notice thereof,—that is, not of the use, but of the claim of right to use against the objections or protest of the owner. A right that starts permissively, and is not claimed as a right independent of permission, does not start the running of the statute."

A few of the many cases announcing the same rule and holding that mere permissive use can never ripen into title are Black v. Whitacre, 206 Iowa 1084, 221 N. W. 825; McBride v. Bair, 134 Iowa 661, 112 N. W. 169; Austin v. Baxter, 189 Iowa 138, 176 N. W. 277; Ott v. Freese, 197 Iowa 528, 197 N. W. 472; Manning v. George, 205 Iowa 994, 219 N. W. 135; Culver v. Converse, 207 Iowa 1173, 224 N. W. 834; Zigefoose v. Zigefoose, 69 Iowa 391, 28 N. W. 654.

The plaintiffs have not brought themselves within the law or the facts of cases like Ellsworth v. Martin, 208 Iowa 169, 225 N. W. 417; Molene v. Tansey, 203 Iowa 992, 213 N. W. 759; and Thompson v. Schappert, 229 Iowa 360, 294 N. W. 580.

The trial court found the equities of the cause with the appellee. We have no inclination to disagree therewith and the decree is, therefore, affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.