MERNA B. PHILLIPS, appellant, v. JOHN B. GRIFFIN et ux., appellees.

No. 49798.

(Reported in 98 N.W.2d 822)

October 20, 1959.

Eskil C. Carlson, of Des Moines, for appellant.

Walters, Bump & Jordan, of Des Moines, for appellees.

Peterson, J.—This case involves a dispute between two neighbors as to an alleged joint driveway. Defendants are the owners of the property known as #4055 Plain View Drive in Des Moines, and plaintiff is the owner of the property immediately to the east and known as #4053 Plain View Drive. The case arises because plaintiff claims a roadway easement six feet wide on the east side of defendants' property. This is an equity action to establish such driveway easement as against defendants' property. The trial court decided the case in favor of defendants and plaintiff has appealed.

The commencement of the difficulty between the two neighbors arose in 1952 when defendants erected a fence on their east lot line. There is no dispute between the parties as to the location of the line. Several owners have had surveys made through the years and the property line has become well estab-

lished. For some reason plaintiff did not commence this action until five years after the fence was erected. We will consider this matter later.

Outside of fireplaces which now extend 18 inches beyond the house on plaintiff's house and which did extend about a foot beyond the house on defendants' house prior to its removal, the distance between the two houses is 19 feet. About 11 feet of this distance is a part of defendants' lot and 8 feet is a part of plaintiff's lot. Plaintiff's difficulty arises from the fact that the fireplace and chimney extend out 18 inches beyond the house leaving only 6½ feet between the chimney and the fence, which is too narrow for comfortable driving of modern cars.

The ownership of the parties to their respective properties extends back a similar number of years. Each family moved into the respective houses in 1945.

This case is different from the ordinary case involving a joint driveway. Usually the driveway is one driveway running between the two houses and used by both parties. This was the situation in Ellsworth v. Martin, 208 Iowa 169, 225 N.W. 417. In that case both parties had used one driveway from the street back almost to their respective garages. Then, each party left the common driveway and drove into his garage located on his own lot. In this case there have always been two driveways side by side. The entrance from the street to each property is a separate and distinct entrance. The only place each of the property owners left his or her separate driveway on his or her own lot was to veer over a foot or two on the opposite property to drive around the fireplaces and chimneys extending out beyond the wall of each house.

Following is a sketch of the two properties to clarify the situation:

PLAIN VIEW DRIVE

1354

■ A roadway easement may be established in one of four methods: by written grant; by prescription; by necessity; or by implication. Webb v. Arterburn, 246 Iowa 363, 67 N.W.2d 504; Paul v. Blakely, 243 Iowa 355, 51 N.W.2d 405; Loughman v. Couchman, 242 Iowa 885, 47 N.W.2d 152; Restatement of Property, Servitudes, ch. 38, p. 2921 et seq.; McKeon v. Brammer, 238 Iowa 1113, 29 N.W.2d 518, 174 A. L. R. 1229.

In the case at bar no easement was ever established by written grant or agreement. No reservation of an easement was contained in the deeds to the parties to this action, nor in any deeds held by prior owners. Appellant does not claim establishment of an easement by necessity or by implication. Detailed consideration of said two methods of establishment of easements is, therefore, not necessary. Even if claimed by appellant the facts of the case do not establish an easement by either of said methods.

Appellant's counsel bases his claim to the driveway easement by prescription rights. We will consider the elements necessary to establish an easement by this method, both under statute and by decisions. Webster's Dictionary defines legal "prescription" as follows: "The process of acquiring rights by uninterrupted assertion of the right over a long period of time."

Section 564.1, 1958 Code, provides: "In all actions hereafter brought, in which title to any easement in real estate shall be claimed by virtue of adverse possession thereof for the period of ten years, the use of the same shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession shall be established by evidence distinct from and independent of its use, and that the party against whom the claim is made had express notice thereof; and these provisions shall apply to public as well as private claims."

■ By "prescription" means by adverse possession under claim of right and color of title, openly, notoriously, continuously and hostilely asserted against the other party for ten years or more. Webb v. Arterburn, supra.

■ Claimant must show more than use. To comply with 564.1, Code of 1958, there are two other requirements: 1. That he claim his easement as his right, and this must be established

by evidence distinct from and independent of its use. 2. That the party against whom claim is made must have express notice before 10-year adverse possession; not alone of the use, but of the claim of right to use against objections and protest of owner. Chicago, Milwaukee, St. Paul & Pacific R. Co. v. Cross, 212 Iowa 218, 234 N.W. 569; Paul v. Mead, 234 Iowa 1, 11 N.W.2d 706; Hadsall v. West, 246 Iowa 606, 67 N.W.2d 516.

The statute provides, and this is supported by many decisions, that mere use of the property is not sufficient. Joseph v. Sharp, 172 Iowa 254, 154 N.W. 469; Jones v. Peterson, 178 Iowa 1389, 1394, 161 N.W. 181, 183; Rater v. Shuttlefield, 146 Iowa 512, 125 N.W. 235, 44 L. R. A., N. S., 101; Young v. Ducil, 188 Iowa 410, 176 N.W. 272.

█ The law is well settled that the establishment of an alleged oral gift or grant of a permanent easement in real estate must be by clear, definite and unequivocal testimony. Chicago & Northwestern Ry. Co. v. Sioux City Stockyards Co., 176 Iowa 659, 158 N.W. 769; Lehfeldt v. Bachmann, 175 Iowa 202, 157 N.W. 456; Young v. Scott, 216 Iowa 1253, 250 N.W. 484; Gerdts v. Mulford, 230 Iowa 647, 298 N.W. 873.

In order to analyze the evidence on the question of adverse possession being established by evidence distinct from and independent of use of the property in question, it is advisable that we quote from the testimony of plaintiff and the only witnesses called by plaintiff to support her contention. Mrs. Phillips, the plaintiff, testified:

"Q. And you never said anything to the defendants about a joint driveway then, did you? A. No. We just assumed it was that way.

"Q. You mean you assumed it was that way? A. Well, everybody that's lived there in the last 38 years has assumed the same thing.

"Q. But you never notified Mr. and Mrs. Griffin when they moved in that this was a joint driveway? A. No, there was no reason to."

Outside of her own evidence plaintiff tendered the evidence of only two witnesses. They had lived in the Griffin property in past years. Mr. W. C. Wellman lived at #4055 Plain View

Drive, the Griffin property, from July 1940 to September 1945. He testified:

"I never had any conversation with the parties living at 4053 concerning the use of the driveway. It never came up as a problem. There was never any discussion.

"Q. Nobody ever asserted any rights to the driveway? A. No.

"Q. The use of the driveway was never questioned? A. No.

"Q. Did anybody or your predecessor, in the chain of title or the person you bought from ever say anything to you about the driveway or the use of that driveway? A. No, I don't recall that ever having come up when I purchased the property.

"Q. Were you ever advised by the people at 4053? A. No.

"Q. That there was a joint driveway? A. No.

"Q. Now, Mr. Wellman, when you sold this property to Mr. and Mrs. Griffin, was anything ever said to them about any driveway? A. * * * To the best of my knowledge, there wasn't. I met the Griffins of course. I had very little personal contact with them and relative to this situation was handled in the main by the real estate men.

"Q. Yes, so you did not inform Griffins anything about a joint driveway between the properties? A. I would be certain that I didn't."

The other witness for plaintiff was Albert Guggedahl. He lived in the property now occupied by defendants during the years of 1931, 1932 and 1933. At that time plaintiff's property was owned and occupied by Loren Emmert. Mr. Guggedahl testified:

"Q. Now was there anything ever said between you and Mr. Emmert about a joint driveway? A. No, actually the question never came up. I recall that as we sometimes had heavy snowfall that Mr. Emmert and I would clear the driveway for both cars.

"Q. And you were never notified at any time about the use of the driveway, it was merely permissible, is that right? A. I was never notified of anything concerning driveways.

"Q. And during all the time you lived there nothing was ever said or came up about the driveway? A. Nothing whatsoever."

■ The burden was upon plaintiff to offer evidence in accordance with her petition, and the statute, sustaining the allegation that she was the owner of a roadway easement across the east six feet of defendants' property. The above is the substance and extent of plaintiff's evidence as to a joint driveway. This falls far short of the statutory requirement that "the fact of adverse possession shall be established by evidence distinct from and independent of its use, and that the party against whom the claim is made had express notice thereof;".

Mr. Griffin, defendant, testified concerning the driveway:

"Q. At any time during the negotiations for the purchase of the house, was anything said about a community or joint or common driveway between the two properties? A. No.

"Q. Was it apparent to you that there was room between the two properties for two separate driveways? A. Yes."

In 1952 when plaintiff came home from work one day she found a row of post holes on the line between the two properties. She thought they appeared to be partly on her property so she pushed the holes in on her side of the fence. She had an attorney, Mr. Phil Colavecchio, call Mrs. Griffin and tell her to be sure that no part of the fence being erected extend over on her property. The importance of this incident was that Mrs. Phillips made no claim to a roadway easement on the east six feet of defendants' property; only that the fence be kept off her property.

■ For five years she made no claim as to such easement right. Then she served a written notice on defendants demanding a quitclaim deed conveying an easement right to her. A written notice such as plaintiff gave defendants twelve years after the parties moved on the properties constituted no compliance with statutory requirement. The position of plaintiff with reference to the fence negatives her claim to adverse possession of an easement over the east six feet of defendants' property.

Defendants solved a narrow driveway problem in 1954 by removal of their chimney, which extended about a foot beyond the wall of their house. It gave them a clear driveway about 11 feet wide from the street to the garage. The question of the removal of plaintiff's 18-inch protrusion of fireplace and chim-

1358

ney was raised with her on cross-examination. Her answer was: "Yes, but that chimney happens to be our furnace chimney as well as a fireplace and cannot be removed."

She did not seem to object to fireplace removal. As to her furnace, she had converted it from coal to gas a few years earlier. A small chimney on the inside of the east wall of the house would amply care for any escaping gas fumes, and would leave her an 8-foot clear driveway from the street to her garage.

Decree and judgment of trial court is affirmed.—Affirmed.

All JUSTICES concur.