Upton & Swivel v. Brazier.

## UPTON & SWIVEL v. BRAZIER et al.

1. Mining license. A license to mine upon a certain tract of land will not, unless clearly expressed or necessarily implied, be held to be exclusive.

2. —— PAROL LICENSE: A parol license to mine upon lands, unaccompanied by actual possession, or the expenditure of money or labor thereunder, may be countermanded by the licensor.

*Appeal from Dubuque District Court.*

THURSDAY, OCTOBER 13.

EQUITY: MINING PRIVILEGES—NATURE AND EXTENT OF. The defendant, Eiffes, being the owner of certain land, about one hundred and sixty acres, in Dubuque county, in August, 1860, gave to Nicholas Tarter, Charles Linden, and F. J. Cramer, a *parol license* to mine for lead ore; they paying for the privilege, one-fifth part of all mineral raised. The *extent* of this privilege is one of the principal matters in dispute, and the controversy in this respect will be further referred to in the opinion.

The plaintiffs, Upton and Swivel, claim to be the assignees of the original license granted to Tarter, Linden and Cramer. They further aver that they, and those under whom they claim, had been in the possession of said premises, working and enjoying the benefit of this mining right or privilege, until about August, 1862, when Eiffes, colluding with the defendants, Brazier and Burkle, allowed the latter to enter upon and take possession of the mines of the plaintiffs, who pray for an injunction, restraining defendants (whose insolvency, except as to Eiffes, is alleged), and for an account. Defenses: first, denial of any right in the plaintiffs, these rights having been forfeited and abandoned; and, second, alleging that the right, if subsisting, did not embrace, or extend to, the mines worked and claimed by the defendants. Certain special issues were submitted to a jury, after which a decree was ordered by the court below, dismissing the petition. From this decree plaintiffs appeal.

*E. McCeny* for plaintiffs.

*D. E. Lyon* for defendants.

DILLON, J.—The first question which is presented, is as to the extent of the grant or privilege which Eiffes gave to the original licensees (Tarter, Linden and Cramer), of whom the plaintiffs claim to be assignees. This license is conceded to have been by parol. The plaintiffs contend that it was an *exclusive privilege*, for an *indefinite time*, to mine on *all* of Eiffes' land, except so much as he and his hired man should be mining on. On the contrary, defendants contend that the original licensees were to have, not the right to mine *all the land*, but only upon a certain *east and west range*, called the *old* range, or crevice, running through Eiffes' land, and to be confined to the walls of it; and that it was to be entirely optional with Eiffes whether, when they were done with this range, he would allow them to work further or not. The testimony on this subject is conflicting. It appears in evidence, that in the latter part of 1862, the defendants, Brazier and Buckle, by the parol license of Eiffes, commenced searching for ore, or, in the mining technology of the witnesses, *prospecting*, on another part of Eiffes' land, and finally succeeded in discovering another range or crevice, which yielded some five hundred dollars worth of mineral. This range or crevice, is located eighty-three feet north of the old range, on which the plaintiffs had worked, but were not working at the time the lode or lead was discovered by the defendants. It is a separate and entirely independent range, and was unknown to the plaintiffs, and to every one, until it was found, discovered, by Brazier and Buckle. The following special questions of fact were submitted to the jury: "*First:* Did Eiffes lease to Tarter, Linden and Cramer, all the land described in the petition?" Answer—"No." *Second:* "Were not Tarter, Linden and Cramer, *confined* to a certain crevice on Eiffes' farm, by terms of their mining lease?" Answer— "Yes, until the old one was worked out." *Third:* "Have

defendants entered upon the crevice or land, leased by Eiffes to Tarter, Linden and Cramer?" Answer—"No." *Fourth:* "Did Brazier obtain a mining lease from Eiffes?" Answer—"Yes." *Fifth:* "Is not the crevice struck up by Brazier, a new and distinct one from the old crevice which Tarter, Linden and Cramer leased of Eiffes?" Answer— "Yes."

These findings, if they stand as being warranted by the testimony, are decisive of the case against the plaintiffs. They seem to accord with the probabilities of the transaction, as well as with the weight of the testimony. It does not seem probable that Eiffes would give three. men an exclusive verbal license, without limit as to *time*, embracing his whole farm, except so far as he and his hired man might wish to work. The defendant's theory is more reasonable, viz., that the original licensees were to have but one range *certain*, and only one at a time. One is as much as these men could well and advantageously work. The men employed did not work constantly, or exceed two or three in number. No machinery but the rudest and simplest kind—the spade, pick and windlass—was contemplated or employed. The nature of the subject-matter of the privilege gives plausibility to the defendant's version of the agreement. The privilege did not contemplate " prospecting" for surface deposits or " float mineral," but that which is found in *crevices* or *ranges* — which are fissures or openings in the rock, and which is "the characteristic form of occurrence in the Dubuque district." (Geology of Iowa, vol. 1st, part 1st, page 447.) We are satisfied that the plaintiffs, conceding for the argument, that they stand in the shoes, and are entitled to all of the rights of the original licensees, were confined to the old range, and to the walls of it, certainly until it was worked out. As there was no proof that it was worked out, and

that they had applied for, or sought to find another range, they have no right to complain that the landowner has seen fit to grant to others the same privilege of prospecting and mining.

This is one answer to the plaintiff's action; another, and a kindred answer is, that if Eiffes granted them the 1. MINING privilege of mining upon his land, this would not, LICENSE. unless clearly expressed, or necessarily implied, be held to be *exclusive.* See, on this subject, *Beatty et al.* v. *Gregory et al., ante,* and authorities there cited, particularly *Lord Mountjoy's case,* 4 Leon., 147; *S. C.,* Godb., 17; *Cheatam* v. *Williamson,* 4 East, 469; *Hanley* v. *Wood,* 2 B. & Ald., 724.

Another answer is, that as to the new range or crevice discovered by Brazier & Buckle, the plaintiff's license 2.——Parol (admitting it was subsisting, and embraced the license. whole land), would give them no right to recover for the value of the mineral obtained by others in another range or crevice. It was a simple license, not a lease or transfer of the mineral. They obtained no rights beyond the range or crevice in which they worked, and of which they had actual possession. This, so far as accompanied with actual possession, the land owner could not arbitrarily, at his pleasure, and without notice, revoke, or without cause, forfeit. But as respects another, and undiscovered range or lode, concerning which the plaintiffs had made no expenditure of money or labor, the parol license, not having been executed or acted upon, would be countermandable. *Beatty et al.* v. *Gregory et al., supra,* and cases there cited; *Doe ex dem. Hanley* v. *Wood, supra; Rerick* v. *Kerns,* 2 American Leading Cases, 682, and notes.

These constitute reasons enough for affirming the decree, without considering whether, upon the evidence, the plaintiffs had forfeited or abandoned their right.

Decree affirmed.