J. M. PAUL, Appellant, v. ED MEAD et al., Appellees; DAVID WINE, Intervener, Appellee.

No. 46299.

2

NOVEMBER 16, 1943.

F. E. Northup and C. L. Becker, both of Marshalltown, for appellant.

Boardman, Cartwright & Druker, of Marshalltown, for intervener appellee.

Ed Mead and George Lennox, appellees, not represented by counsel.

HALE, J.—This is an action in equity with prayer for injunction, begun in 1941, to determine the boundary line between the farm land of Paul, plaintiff, and Wine, intervener. The action was originally also against Mead, whose land adjoins the northwest forty acres of plaintiff's farm, and Lennox, whose land was north and adjoining plaintiff's northeast forty acres, but the controversy as to Mead's land was adjusted and the farm land of Lennox was purchased by Wine. Decree was entered for intervener and plaintiff appeals. Neither Mead nor Lennox filed any argument and they are not represented by counsel. The parties concerned in this appeal are the plaintiff and intervener.

The controversy involves the rights to a strip of land running east and west, which was at one time a public road located between the farm of plaintiff and the farms to the north thereof owned by Mead and Wine. Plaintiff claims title by prescription to the strip of land in controversy, and contends that certain

proceedings of the board of supervisors terminating on January 19, 1931, to vacate the road, were null and void on account of lack of notice thereof and jurisdiction of the board of supervisors; but that if such vacation proceedings were valid he has a right of way over the strip of land by adverse possession, claiming more than ten years of adverse use thereof since said vacation; or, alternatively, he would be entitled to one half of said strip of land as his own in fee; thus claiming either a right of way over the whole strip of land or a fee in the south half of the strip. Plaintiff states that the strip of land is a highway as laid out, established, and used, but is claimed by defendants to have encroached upon their land; that defendants have proceeded to erect a fence along the south line of the original highway as laid out and recognized and acquiesced in by the title owners for more than forty years and more than ten years following the order of vacation of said highway, and that the fence on the south line of the Wine land, as it existed from and after January 19, 1931, has been the sole and only line of fence between the lands of plaintiff and defendants, and that the road was occupied and used by this plaintiff as a means of access to his west eighty acres. He further alleges that said strip of land was used and traveled over continuously by plaintiff and others as a way of necessity, and defendants have recently closed said right of way against plaintiff and have fenced off all the land included in said highway. Plaintiff further alleges failure of the board of supervisors to erect barriers closing the road.

Intervener, by way of defense, pleads a general denial; that the road has been duly vacated; that the road has been abandoned and plaintiff is estopped from questioning the vacation of the road, having treated said road as abandoned and vacated and by his actions and conduct joined in such abandonment and vacation; that the public has abandoned said road and that it has not been used as a public highway for more than ten years; that intervener and his predecessor in title have for more than ten years been in adverse possession of that part of the abandoned road located on the governmental subdivision owned by intervener, and any rights of plaintiff or the public have therefore been extinguished; and that the controversy has already been

conclusively adjudicated by official fence viewers, which adjudication is denied by plaintiff in his reply.

Plaintiff, Paul, is the owner of the NE ¼ of Section 30, Township 84 North, Range 18, West of the Fifth P. M., Marshall County, Iowa. Defendant Mead is the owner of the W ½ of the SE ¼ of Section 19, Township 84 North, Range 18, West of the Fifth P. M., which adjoins the northwest forty acres of plaintiff's land on the north. Lennox was originally the owner of the E ½ of the SE ¼ of said Section 19, Township 84 North, Range 18, but he conveyed the same to Wine, intervener, who is now the owner. The south forty acres of Wine's land adjoins the northeast forty acres of Paul's land.

About the year 1875 the road in dispute was established by the board of supervisors on the east-and-west section lines between Sections 19 and 30, Township 84, Range 18, and between plaintiff's and intervener's land it was sixty-six feet wide. Along the north line of the east half of the Paul farm there is a creek and the road in question was traveled east and west north of the creek for about eighty rods. About eighty rods west of the northeast corner of the Paul farm this creek turns and runs in a southerly or southwesterly direction. There was testimony that this creek started to widen and began to cut into the road; some testimony that it remained about as at the time the road was established; and also that about 1906 the roadbed as used was moved farther to the north and the south fence line of the Lennox farm was moved farther north, making a jog to the south at the west end of the south fence line of the Lennox land. By the survey measurements of the assistant county engineer the east end of the south fence line of the Lennox land (now the Wine land) as thus moved north was fifty-three feet north instead of thirty-three feet north of the section line, and the west end of the fence was forty-eight feet north of the section line. As thus testified, the section line would be next to the bank of the creek, leaving little or no traveling space between the section line and the north bank of the creek.

Paul, to get to the northwest forty acres of his farm from his residence, which was located about the middle of the east line of his farm, went north on a graveled road until he came to the road in controversy and then traveled west along such road to

reach his northwest forty acres. There was testimony that the fence between Paul's land and Wine's farm was repaired to some extent by Paul's tenants, and these tenants let their cattle pasture on the land between the creek and the Wine south fence, erecting temporary cross fences. Shortly before this suit was begun the road was fenced by Lennox from the creek north to his south fence line, and thereupon Paul brought this action for injunction and to confirm his rights. Prior to this time, but after the vacation proceedings were terminated, Lennox, the then owner, caused wires and a gate to be hung across the east entrance of the former roadway so as to form a barrier. The west half of the road was also closed immediately after the vacation and the roadway put into a field. After the vacation proceedings Paul's tenants used the road south of the Wine and Mead lands for pasturing cattle, in addition to using it as a way to the northwest corner of the Paul farm, and Lennox used this strip of land of the vacated road for pasture, and the Western Grocer Company, a tenant of the Lennox land, used the vacated roadway for dumping refuse and for getting water out of the creek. There was further testimony that in 1940 Mead built a fence on the south side of his forty acres on the section line between his land and the Paul farm, which would be in about the center of what had been the west part of the original roadway; and Paul built a substantial fence in the road for the next forty rods east, which also was on the strip of land which had been a roadway, Paul's fence not being exactly on the section line, but approximately so, being five feet north of the section line on the east end of the Mead fence and about sixteen feet north farther east at the other end of his fence.

There is much disagreement as to the testimony, as would naturally occur in a case of this kind, especially as to the use of the premises by Lennox and whether the use by Paul was permissive or not. However, there is no question but that a fence of some kind across this roadway was constructed. Nor is there much question of the use by both Lennox, the owner on the north, and Paul, the owner on the south, of the strip thus enclosed for pasture.

I. It is necessary, for a better consideration of the

claims of the parties to this action, that we take up the errors assigned out of the order in which they appear in appellant's brief and argument. We shall therefore first consider his Division III, which relates to the action of the board of supervisors in vacating road 297. Appellant claims he was, at the time of such proceedings, an adjoining landowner and a resident of Marshall county, and was not served with notice, did not appear therein, and had no knowledge thereof. He bases his objection on the provisions of section 4575 of the Code of 1924, which were, in relation to vacation, establishment, and alteration of roads, then and since that time, the same as in the Code of 1939. This statute reads as follows:

"Within twenty days after the day is fixed by the auditor as above provided, a notice shall be served on each owner of land lying in the proposed road, or abutting thereon, as shown by the transfer books in the auditor's office, who resides in the county, in the manner provided for the service of original notices. If the owner of the land as thus shown does not reside in the county, similar notice shall be served upon any person who is in the actual occupancy of such land. In any case, notice shall be published, once each week, for four weeks in some newspaper printed in the county."

Appellant also cites section 4621, Code of 1924, as requiring notice to owners, as following section 4611 requiring such notice. Section 4621 does not apply to proceedings of this kind, but relates to certain changes made by the board of supervisors. The sections cited are a part of chapter 237, which includes sections 4607 to 4621 inclusive, and relates to "changes in roads, streams, or dry runs." The purpose of these provisions of the Code is stated in said section 4607:

"Boards of supervisors on their own motion may change the course of any part of any road or stream, watercourse, or dry run, within any county in order to avoid the construction and maintenance of bridges, or to avoid grades, or railroad crossings, or to straighten any road, or to cut off dangerous corners, turns, or intersections on the highway, or to widen any road above stat-

utory width, or for the purpose of preventing the encroachment of a stream, watercourse, or dry run, upon a public highway."

The procedure in such cases and for condemnation is set out in the sections following. These sections of the Code were an amplification and addition to the Code of 1897 and were contained in the Supplemental Supplement, 1915, sections 1527-r1 to 1527-r7 inclusive. With some subsequent amendment and addition by the Acts of the Fortieth General Assembly, chapter 81, they were amended, revised, and codified by chapter 8, Acts of the Extra Session of the Fortieth General Assembly. The object and application of these sections are fully set out and explained in the quoted section 4607.

We here note that the notice prescribed in section 4575 is to be served on each owner "as shown by the transfer books." Our first question, then, must be whether or not, under the evidence, appellant was entitled to notice. We have nothing in the record to indicate that appellant's name was shown upon the transfer books in the auditor's office, and there is no requirement that it shall be served upon any person claiming to be the owner unless his name does so appear. The statute "makes the transfer book conclusive upon this matter, and we know of no reason why the auditor should go further." Berger v. Tracy, 135 Iowa 597, 599, 113 N. W. 465, 466 [error dismissed 215 U. S. 594, 30 S. Ct. 410, 54 L. Ed. 341]. See, also, Wilson v. Hathaway, 42 Iowa 173. And in the case of McKinney v. Baker, 100 Iowa 362, 364, 69 N. W. 683, 684, this court, in affirming a ruling of the district court sustaining a demurrer, says:

"The petition demurred to does not show that plaintiffs' ownership appeared upon the transfer book, nor that they resided in Keokuk county. Nor is it alleged that there was any occupier of the land they claim to own, or if there was such occupier that he was a resident of this state. Hence, no personal notice was necessary as to plaintiffs, or as to the occupier of their land, if there was one."

In the instant case appellant alleges that he was a resident of Marshall county, but nowhere alleges or proves that his name appears upon the transfer books. No complaint is made as to

8

the occupier of the land. It cannot be said that the notice was defective. Sullivan v. Robbins, 109 Iowa 235, 80 N. W. 340, and Moffitt v. Brainard, 92 Iowa 122, 60 N. W. 226, 26 L. R. A. 821, do not support appellant's argument. In the Moffitt case the ownership appeared upon the transfer books. Appellant also cites McKinley v. Lucas County, 215 Iowa 46, 49, 244 N. W. 663, 665, in urging that the ordinary presumption of regularity attending the actions of all officers and courts of limited and inferior jurisdiction does not apply. But as recited in the opinion in that case:

"A review of this record therefore shows that it is wholly silent as to any notice of this proceeding prior to the action of the board of supervisors."

The opinion distinguishes the case from Harbacheck v. Moorland Telephone Co., 208 Iowa 552, 226 N. W. 171, and states that jurisdiction must be established before the presumption applies to inferior tribunals. But the facts in the present case, we think, bring it more nearly under the rule announced in the Harbacheck case.

We have before us as exhibits the records in relation to the vacation of this road. Road Record No. 4 of Marshall county, page 66, recites that the auditor caused a notice, directed to the persons owning and occupying the lands across which said highway was located, to be published for four consecutive weeks in the Times-Republican, and, "He also caused said notice to be served upon the resident owners and occupants of the lands across which said highway is located." (No names are mentioned.) The record further shows, "And now, to-wit, January 12, 1931, at 12 o'clock noon, it being the time fixed for final hearing, and the Auditor being satisfied that proper notice has been given to all persons entitled thereto * * * said road is hereby vacated." This is signed and certified by the county auditor, by his deputy. This was sufficient under the Code of 1924 and subsequent Codes, section 4577, to authorize the auditor to proceed to vacate the road.

In addition, there was a resolution of the board of supervisors shown in Supervisors' Record of Minutes No. 9, page 567, confirming the vacation of the road, dated January 19, 1931,

stating that notice by publication had been given but not reciting other notice. The matters stated in the record would authorize the presumption as to jurisdiction and notice.

"Until the contrary is shown, it is presumed, within proper limitations, that public officials acted legally in performing authoritative acts in the establishment of highways." Harbacheck v. Moorland Telephone Co., supra, at page 556 of 208 Iowa, page 173 of 226 N. W. (citing cases).

See, also, Davelaar v. Marion County, 224 Iowa 669, 277 N. W. 744; State v. Minneapolis & St. L. Ry. Co., 88 Iowa 689, 56 N. W. 400; and cases cited; Larson v. Fitzgerald, 87 Iowa 402, 54 N. W. 441, and cases cited. In all these cases it is held that the record recitals are sufficient to raise the presumption of regularity. When, under the statute, the auditor was satisfied that notice had been properly given, the burden was upon those asserting the contrary to establish that it was not so given. Pagels v. Oaks, 64 Iowa 198, 19 N. W. 905. On the question of notice, we are satisfied that appellant has failed to show by the record that he was entitled to notice, and that, even if so entitled, the record is such as to show jurisdiction and the presumption of regularity; and, indeed, it indicates affirmatively that required notice was given. Our holding must therefore be that the road was duly vacated.

II. Appellant claims that the court erred in not determining that the fence maintained on the south part of the appellee's land is the north boundary of the strip of land in controversy, and in not establishing and confirming appellant's title to said strip, either by right of easement in all or ownership of part thereof, that is, to the center of the highway as claimed by him. His claim is by adverse possession and acquiescence. To entitle him to acquire title by adverse possession he must show ten years' continuous and exclusive possession, and said possession must be open, notorious, and hostile, under a claim of right.

Appellant cites various cases in support of his claim by adverse possession. It would be of no value to attempt to analyze and distinguish these various cases, differing as they do in the facts. The legal essentials to the acquisition of such a right are as above stated.

"The doctrine of adverse possession is to be taken strictly; there are no equities in favor of a person who seeks to acquire the property of another by an adverse holding, and his acts are to be strictly construed." 2 C. J. S. 512, section 1.

Appellant argues that the doctrine of acquiescence applies, and cites cases. But none of the cases in support of his claim applies to the facts as we find them developed by the testimony. He argues that such acquiescence may be inferred, and in many cases this is true; but no inference could be drawn in the instant case, where the land is used by both owners or by their tenants. The amount of use of the land is not of the greatest importance. That it was used for some purpose by tenants of both tracts refutes the idea of exclusive use.

Appellant argues that a claim of right is sufficient to entitle him to rely upon his possession as adverse, and that he does not have to have color of title. This is true, but other than traveling along the vacated road, and its use at times as pasture, there is nothing to show any asserted hostile claim of right. Until shortly before the institution of this suit there was nothing to indicate that appellant's use as a roadway was other than permissive.

The closing off of the tract by some form of fence and gate by Lennox, and the maintenance of such fence by both owners of the adjacent land, was an indication that it was not held by appellant under a claim of right for travel or other purposes. In argument appellant states:

"If it [the roadway] had not been vacated, the plaintiff appellant still had the right to travel over and use it. If it had been legally vacated, the plaintiff appellant used and occupied the land adversely up to the division line fence, or was entitled in any event to an easement to travel over the same."

We are satisfied, as we have indicated, that he has no title to the land north of his north boundary line, that is, the section line.

Has he any right in the nature of an easement? Our statute, section 10175, Code of 1939, in relation to easements, is as follows:

"In all actions hereafter brought, in which title to any

easement· in real estate shall be claimed by virtue of adverse possession thereof for the period of ten years, the use of the same shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession shall be established by evidence distinct from and independent of its use, and that the party against whom the claim is made had express notice thereof; and these provisions shall apply to public as well as private claims.''

Most of the cases relative to adverse possession have arisen on some claimed right to the use of land as a way of travel in the form of an easement. Our statute for many years has said that use alone is not evidence and there shall be express notice of claim of right. The mere use, therefore, never ripens into an easement. It must be shown that the person asserting an easement claimed a hostile right to use the way, and with the landowner's knowledge. Culver v. Converse, 207 Iowa 1173, 224 N. W. 834 (citing cases). This case is cited and followed in our recent cases of Slack v. Herrick, 226 Iowa 336, 283 N. W. 904; Gerdts v. Mulford, 230 Iowa 647, 298 N. W. 873, and cases cited. See, also, Chicago, M., St. P. & P. R. Co. v. Cross, 212 Iowa 218, 234 N. W. 569. The holding of all these cases is that a permissive use never ripens into an easement. And, as stated in the Culver case, the use is presumed to be permissive. In the present case it may be said, as in Grube v. Wells, 34 Iowa 148, 150, which has been followed many times:

''The facts relied upon to constitute adverse possession must be strictly proved; they cannot be presumed. The law presumes that the possession of land is always under the regular title, and will not permit this presumption to be overcome by another presumption. There can be no such thing as conflicting legal presumptions.''

Here we have no evidence of express notice of any claimed right as required by statute. Manning v. George, 205 Iowa 994, 219 N. W. 135. There is no testimony that would even authorize a presumption of a claim of right, independent of the statute. But there is testimony of failure to assert any such claim, such as testimony of an attempt to purchase a right of way. The evidence, we think, shows that the use was permissive only.

III.  Much space is devoted by counsel to the question of the correct line of the center of the road.  Counsel for both parties devote a large part of the abstract and amendment to abstract to the testimony of C. J. White, assistant county engineer of Marshall county, in addition to which we have before us, and have examined, the transcript and the exhibits offered at the trial of the case.  With so large a record of the testimony of this one witness, it is impracticable and unnecessary to set out in this opinion a complete review and analysis of his testimony.  Mr. White has had long experience in surveying in Marshall county and apparently was quite familiar with the location.  At one point in his testimony he speaks of certain parts of the land as being chained under his direction in 1918.  He had consulted records of other surveys and was able to locate the southeast corner of Section 19, the Wine land, which would also be the northeast corner of the Paul land.  The distance then from the point which he fixed as said southeast and northeast corner was practically the same north to the forty-acre corner as it was south to Paul's forty-acre corner.  He further testified that the point which he fixed as the east end of the road in controversy had formerly been marked by a rod, but is not now so marked because of the rod's destruction when a bridge was built in the north-and-south road east of these lands; but was fixed and determined by him by monuments on the line of the section.  He testified also as to the southwest corner of the Mead land, which would be one-half mile west from the east end of the road, being marked by a stone on a survey which he had made six or eight years before.  The surveys made by the witness correspond reasonably with previous surveys, as shown by the notes and markers set up.  We have read the record carefully in the abstract, amendment to abstract, and transcript and are satisfied that the location of the former highway was correctly determined by Mr. White on sufficient data and from correct records.  From a review of the entire record we find nothing which would tend to discredit or disprove the location fixed by him.  Our conclusion is that he was correct in fixing the middle line of the road at approximately the government division line, which is, as shown by his measurements, fifty-three feet south of

the present fence at the east end and forty-eight feet south of such fence line at the west end of the disputed tract, and this is the south line of the Wine land.

██ IV. Appellant makes reference in his argument to the road as a way of necessity for access to the northwest quarter of his one hundred and sixty acres. The fact that it would be more convenient is not sufficient to constitute the strip as a way of necessity, and the record does not sustain his claim. The point is not strenuously argued, nor are authorities set out by appellant. Appellee cites Long v. Wilson, 186 Iowa 834, 846, 173 N. W. 76, 80, wherein it is said:

"There is dispute on whether the regularly established highway afforded the appellee an outlet from his farm. If it did not, that is immaterial. That fact will not make private land into a highway. The remedy is not such suit as this, but the pursuit of statute methods for obtaining the outlet."

This contention of appellant cannot be sustained.

V. Appellant has filed a motion to strike portions of appellee's amendment to abstract, and to tax the costs to appellee, and for certification of the record, including the transcript. Such record has been certified and the transcript and exhibits are before us. The grounds of the motion to strike are redundancy and immateriality. We have examined the motion and think that in the main the parts which appellant claims to be redundant are properly included in the amendment. The motion is overruled.

We have determined the principal questions argued by appellant and appellee so far as necessary to a decision of the issues presented. As indicated, we hold the finding of the district court was correct and the decree should be affirmed.—Affirmed.

All JUSTICES concur.