CARL J. ROBERTS, Appellant, v. RAYMOND C. WALKER et ux., Appellees.

No. 47142.

DECEMBER 16, 1947.

John C. Owen, of Washington, for appellant.

James L. Devitt, of Oskaloosa, for appellees.

GARFIELD, J.—We·are without the benefit of the trial court's views on the questions of fact and law presented because it made no written finding of facts and conclusions of law as required by Rule 179(a), Rules of Civil Procedure. Nor are its views otherwise shown.

Since 1941 defendants Raymond and Ruth Walker, husband and wife, have owned an eighty-acre farm, the north half of a certain quarter· section in Mahaska county. Since March 1926 plaintiff, Roberts, has owned a farm of about three hundred fifty-eight acres, very irregular in shape, situated in three different sections, lying generally south and west of the Walker land. For our purposes it is sufficiently accurate to say plaintiff's northeast forty abuts the south line of defendants' west forty and corners with their east forty.

No public highway abuts plaintiff's farm. A highway comes from the east along the north line of defendants' east forty and turns north at the northwest corner thereof. In 1901 the then owner of plaintiff's northeast forty acquired by deed a strip eight feet wide off the west side of·what is now defendants' east forty. Plaintiff acquired title to this eight-foot strip with the purchase of his farm in 1926. This strip was doubtless acquired by plaintiff's predecessor in title as a roadway to the Roberts land. However, a deep gully and steep hill cross the south half of the eight-foot strip. Hence travel over that part of the strip is practically impossible and such part has never been used therefor.

A.E. AUGUSTINE

NW¼ SE¼ SEC. 14
T75N R14W

NE¼ SE¼

R.C. & R.J. WALKER

N

651.3'

55'

64'

SW 368'

409' 12"x14"CORR. PIPE

66'

West 8' of NE¼ SE¼

CARL J. ROBERTS
SW ¼ SE ¼

C.E. & F.E. LISK
SE¼ SE¼

Since about 1901 there has been a private roadway to the Roberts land from the turn in the public highway south over about the north half (forty rods) of the eight-foot strip, thence southwesterly to a gate about forty rods west of Roberts' northeast corner. Travel over the diagonal portion of the roadway apparently started because the south part of the eight-foot strip is so rugged. The plat on the preceding page, an exhibit upon the trial, will aid in visualizing the above matters.

The north part of the roadway is shaded on the plat. The roadway commences at X and turns southwest about fifty-five feet south of G to a gate at Y along plaintiff's north line. In 1945 Walker put a fence and gate across the roadway west of G. After that travel to the south turned slightly to the west about one hundred twenty-three feet north of G and went west rather than east of an oak tree, O on the plat, in order to go through the gate. A little later Walker locked the gate and prevented plaintiff from using the roadway. This suit was started August 30, 1946, asking that the roadway XGY be established as an easement on the theory of adverse possession and that defendants be enjoined from obstructing it. Trial in December resulted in a dismissal of plaintiff's petition. This appeal followed.

■ The roadway in question is not the only means of access to the Roberts farm. There is a road thirty-three feet wide, eighty rods long, off the south side of the southeast forty of the Lisk land by which the east side of the Roberts farm may be reached from a north-and-south highway. This highway meets the east-and-west highway, before mentioned, a quarter mile east of the northeast corner of the Walker land. However, the buildings on the Roberts farm are about a half mile west of point Y and nearly one and one-half miles north and west from the west end of the thirty-three-foot roadway. Rose Hill, the nearest town, is to the northwest. The roadway XGY is thus a much more convenient way from plaintiff's buildings to Rose Hill than is the thirty-three-foot strip. But this fact is insufficient to constitute XGY a way of necessity. Paul v. Mead, 234 Iowa 1, 13, 11 N. W. 2d 706, 712. Nor does plaintiff contend it is a way of necessity.

Without doubt the existence of the diagonal part of the roadway between G and Y is an inconvenience and detriment to defendants in farming their land. That part of the road has never been fenced. But little grading has been done upon it. In wet weather deep ruts were caused by travel and travelers injured defendants' land by packing down the soil and by turning out to avoid the ruts and mudholes. There is evidence four or more parallel tracks existed at times in places on the diagonal part of the roadway. At times travelers would not close the gate at point X nor the gate at Y and defendants' cattle would get out through the open gate.

██ ██ The doctrine of adverse possession upon which plaintiff relies is to be taken strictly. There are usually no equities in favor of one who claims property of another by adverse possession and his acts are to be strictly construed. 2 C. J. S., Adverse Possession, section 1; Paul v. Mead, 234 Iowa 1, 10, 11 N. W. 2d 706, 711. The facts relied upon to establish adverse possession must be strictly proved. They cannot be presumed. The law presumes the possession of land is under the regular title and will not permit such presumption to be overcome by another presumption. Grube v. Wells, 34 Iowa 148, 150; Culver v. Converse, 207 Iowa 1173, 1180, 224 N. W. 834; Paul v. Mead, supra. See, also, 2 C. J. S., Adverse Possession, section 215; 1 Am. Jur., Adverse Possession, section 238.

Section 564.1, Code, 1946, provides:

"In all actions hereafter brought, in which title to any easement in real estate shall be claimed by virtue of adverse possession thereof for the period of ten years, the use of the same shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession shall be established by evidence distinct from and independent of its use, and that the party against whom the claim is made had express notice thereof * * *."

██ ██ Mere proof of use of this roadway is not therefore sufficient to establish plaintiff's claim. Such use may have been permissive only. Plaintiff was required to prove also: (1) That he claimed an easement over the roadway in question as his right, and this must be established by evidence independent of

its use; and (2) that defendants or their predecessors in title had express notice of such claim of right to use the roadway against their objections. A right that starts permissively and is not claimed as a right independent of permission does not start the running of the statute of limitations. Young v. Ducil, 188 Iowa 410, 416, 176 N. W. 272, 274; Manning v. George, 205 Iowa 994, 999, 219 N. W. 135; Gerdts v. Mulford, 230 Iowa 647, 652, 298 N. W. 873, 875.

Although travel over the roadway, especially the diagonal portion, was not always in exactly the same location, due mainly to weather conditions, there is sufficient evidence of actual possession and use of the roadway by plaintiff and his predecessors in title for about forty-five years. Prymek v. Washington County, 229 Iowa 1249, 1254, 296 N. W. 467, 471, bears on this question. However, we are inclined to affirm the trial court on the ground there is insufficient evidence, distinct from use of the roadway, that plaintiff claimed an easement thereover as his right. It follows, of course, there could be no express notice to defendants or their predecessors of such claim of right.

██ Between 1938 and 1941 two culverts were placed in the lower part of the diagonal roadway by plaintiff's tenant, Williams, and remained there until the trial. Assuming the placing of these culverts would be evidence plaintiff then asserted his right to an easement in the roadway, this fact does not aid plaintiff. He must prove that his claim of right and express notice thereof existed for the full statutory period. The statute would not begin to run until plaintiff's claim of right was made and notice thereof given. He cannot base his claim on occurrences within ten years immediately before bringing suit. Manning v. George, 205 Iowa 994, 998, 219 N. W. 135. See, also, Culver v. Converse, 207 Iowa 1173, 1177, 224 N. W. 834, and citations.

Some tile were laid across the roadway by plaintiff's tenant, a short distance north of point Y. It does not appear this was done more than ten years before suit was brought. What we have said about the culverts is also applicable here.

Plaintiff relies upon evidence he or his tenants caused the roadway to be "maintained, worked and graded whenever

necessary.'' Some grading was done on parts of the roadway sometime in 1938; the exact time does not appear. Tenant Williams used a small grader to fill in a low place about half-way between points G and Y and then dragged it. Williams also testified he did grading on the roadway during his tenancy, from 1936 to 1945, when he thought it was needed. There is other evidence a grader was used at· times. What was done was largely dragging or smoothing the surface rather than throwing up a grade. There is also testimony plaintiff and Park, who owned the Roberts land from 1912 to 1921, used a spade or shovel at times to smooth the surface.

Much of the maintenance work on which plaintiff relies to show his claim of right occurred less than ten years before this suit was brought. It does not appear when some of the other work was done. The burden of proof was, of course, upon plaintiff. What was done more than ten years before the bringing of suit is not necessarily inconsistent with mere permissive use of the roadway. This is the effect of our holding in Culver v. Converse, supra, 207 Iowa 1173, 1179, 1180, 224 N. W. 834.

The remaining fact on which plaintiff relies is that he and his predecessors in title or their tenants maintained the gate at point Y. A post rotted off at one time and tenant Williams said he set both posts at Y. It is not shown when this was done but it was at least as late as 1936. (As stated, this suit was started August 30, 1946.) This gate was part of the partition fence between plaintiff's and defendants' farms and in that portion of the fence it was plaintiff's duty to maintain. We are not prepared to hold the maintenance of this gate, largely for the accommodation of plaintiff or his tenants, sufficient evidence of a hostile claim of right to the roadway in question.

Plaintiff cites Prymek v. Washington County, supra, 229 Iowa 1249, 1256, 296 N. W. 467, 472, to support his contention that his maintenance of the gate at Y and the work done by him upon the roadway constitute evidence, independent of use, of his adverse claim. In the cited case, one of the two gates purchased and maintained by the claimant was not upon his land but

was upon the servient estate. There is no evidence plaintiff maintained the gate at X (which had been removed at the time of trial).

But the Prymek case is not applicable here. It was a jury case in which there was a directed verdict against the claimant to an easement in a private way. We held there was some evidence of a claim of right and the case should have gone to the jury. There was testimony that the immediate predecessor in title of the servient estate had assured claimant he had the right to use the roadway and claimant purchased the dominant estate in reliance upon such assurance.

Here there is evidence that prior to his purchase plaintiff was told by a former owner of his land he would have the right to use the roadway. There is no testimony he was given any such assurance by any of defendants' predecessors in title. The evidence of what plaintiff was assured by a former owner of his farm is largely offset by testimony defendants were told by their vendor when they purchased, in substance, that use of the roadway was permissive only and could be discontinued at their election.

■ There is evidence that is inconsistent with plaintiff's present claim. On April 12, 1946, about four and one-half months before commencing this suit, plaintiff wrote Walker:

"I have in view another way out and if it fails would not likely want to use the present way * * * How much an acre would you charge me for a strip forty feet wide along the north side of your land and also along the west side? * * * I may have to get a road condemned straight north from our barn if I can."

There is also testimony of negotiations on many occasions between Augustine, who owns a farm west of Walkers' and north of Roberts', and plaintiff, and between Augustine and a predecessor in plaintiff's title for the sale of some of Augustine's land for the purpose of a right of way to plaintiff's farm. Plaintiff, his tenant, and a prior owner went through Augustine's land at times, with his permission, to get to the Roberts farm.

If, as plaintiff now claims, he had an easement in the roadway in question, why was he interested in the purchase or condemnation of another road? The letter to Walker and the Augustine negotiations are evidence plaintiff was not then asserting a claim of right to the present roadway. Paul v. Mead, 234 Iowa 1, 11, 11 N. W. 2d 706, 712.

There is no evidence plaintiff or any predecessor in his title ever asserted, orally or in writing, a claim to use the roadway in question as a matter of right nor that defendants or any predecessor in their title ever agreed such right existed.

Plaintiff contends he is entitled to use the north part of the roadway from X to G on the theory of mutual acquiescence. Such theory is by no means the same as that of adverse possession. Thompson v. Schappert, 229 Iowa 360, 363, 294 N. W. 580.

As stated, plaintiff is the absolute owner of the eight-foot strip off the west side of defendants' east forty. The roadway between X and G is sixteen or seventeen feet wide. The west half of that part of the roadway covers the eight-foot strip and the east half is on defendants' land abutting the eight-foot strip on the east. About two years before the trial Walker built a fence along the east side of the roadway between X and G. There is evidence defendants and their predecessors in title, as well as plaintiff, have used the roadway, especially between X and G. We understand plaintiff to contend the roadway from X to G has been established by acquiescence as the boundary line between plaintiff's eight-foot strip and defendants' east forty.

Plaintiff seeks to invoke the rule that where adjoining owners for ten years mutually acquiesce in a line, definitely marked by a fence or in some other manner, as the dividing line between them, such line becomes the true boundary. See Vander Zyl v. Muilenberg, 239 Iowa —, 29 N. W. 2d 412, 415, and citations; Hart v. Worthington, 238 Iowa 1205, 30 N. W. 2d 306, 312, and citations. We have applied this doctrine where a driveway, rather than a fence, marks the boundary line. Thompson v. Schappert, supra, and citations.

As plaintiff concedes, a roadway merely between X and

1340

G would be of no value to him. It would leave him about in the center of defendants' farm. We think this is sufficient answer to this contention of plaintiff.—Affirmed.

OLIVER, C. J., and BLISS, HALE, SMITH, MULRONEY, and HAYS, JJ., concur.