MERLE W. SIMONSEN, appellee, v. JOHN TODD, appellant.

No. 52641.

(Reported in 154 N.W.2d 730)

December 12, 1967.

Crary & Huff, by David R. Crary, and Robert J. Crary, of Sioux City, for appellant.

Kindig, Beebe, McCluhan & Rawlings, by Robert E. Beebe, of Sioux City, and McCulla & Moen, by Harlan T. Moen, of Cherokee, for appellee.

STUART, J.—Plaintiff brought this action to enjoin defendant from interfering with his use of a right-of-way across defendant's land alleged to have been established by prescription. Defendant counterclaimed seeking to have a fence line established as a boundary fence. The trial court held the right-of-way was established, enjoined defendant from interfering with its use and awarded plaintiff damages for crops lost in the years defendant prevented plaintiff from using the right-of-way. He also held defendant failed to prove the existing fence line had been acquiesced in as a boundary fence and dismissed defendant's counterclaim. Defendant has appealed.

Doctor Simonsen purchased a farm in Cherokee County in 1919. In the early 1930s he transferred it to his wife. In 1946 she deeded it to their son, the present owner who is plaintiff in this action. Mrs. Ritchie had inherited the adjoining farm in 1900. It was managed by her husband, Fred. Rock Creek meandered along the boundary between the two farms. Between 1938 and 1940 the channel of the creek was straightened and a highway bridge was moved. As a result, the only access to an eight- or nine-acre tract of the Simonsen farm was along a fence on land belonging to the Ritchies.

Doctor Simonsen testified: "* * * Ritchie came to me one day and asked me to come down. Showed me the straightening of the channel of the creek here. The land over east of it, that belonged to me, stopped that overflow there, but he says going to cut off your access to this field down here. He says, you could use this gate, our gate over here, go around the turn—way to go into the field, and if you wish, we will make a memorandum of it and have it filed, put on record. And I told him I didn't see any use for that if we just—if that was alright with him, we would drive around the gate there and use it."

This arrangement persisted until Todd, the defendant, bought the Ritchie farm at public auction in 1957. At the sale, the alleged right-of-way was not mentioned. Plaintiff's evidence indicated his tenant used the right-of-way from that time until the gate was closed by Todd in 1963 without seeking Todd's permission. Todd testified the tenant's hired hand asked

if he could cross his land every spring and that he gave permission until the spring of 1963.

Plaintiff spent no money to make a roadway or improve the one that existed. He instituted this action in March 1965.

I. The parties have not agreed on the scope of our review. Plaintiff contends the matter was tried as a law action and reviewable only on errors. Defendant contends our review is de novo. Although the trial court referred to the action as one at law in his opinion, the petition was captioned in equity and sought injunctive relief. Objections were reserved and never ruled upon. It, therefore, appears the review should be de novo. However, the manner of review is not determinative of this particular appeal.

II. Plaintiff pleaded he "and his predecessors have used this driveway continuously in open and notorious manner, adversely and as a matter of right for a period in excess of twenty (20) years with the full knowledge of defendant and his predecessors in title."

Appellant claimed there was no evidence to establish an easement by adverse user and that permissive use, no matter how long, can never ripen into an easement by prescription.

The trial court found: "* * * the original use was with the consent of the servient owner, but that the use as a right continued for more than ten years, and the court specifically finds that the plaintiff and his predecessors in title used the easement as a matter of right for more than ten years and it matured into an easement by prescription prior to the time that Mr. Todd, the defendant herein, acquired title to the property." Loughman v. Couchman, 242 Iowa 885, 47 N.W.2d 152, and McKeon v. Brammer, 238 Iowa 1113, 29 N.W.2d 518, 174 A.L.R. 1229, were cited as authorities in support of his conclusions.

We have previously held adverse user and "mutual acquiescence" are not the same. Roberts v. Walker, 238 Iowa 1330, 30 N.W.2d 314, 319; Thompson v. Schappert, 229 Iowa 360, 363, 294 N.W. 580. However, in view of our subsequent holding we need not determine the effect of the difference between the pleading and the court's finding.

Prescription is one of the three or four methods by which an easement may be created. Loughman v. Couchman, supra, loc. cit. 888 of 242 Iowa, 153, 154 of 47 N.W.2d; Phillips v. Griffin, 250 Iowa 1350, 98 N.W.2d 822, 824; Webb v. Arterburn, 246 Iowa 363, 67 N.W.2d 504, 512. None of the other methods is involved here.

An easement by prescription is created "by adverse possession, under claim of right or color of title, openly, notoriously, continuously, and hostilely asserted against defendants for ten years or more". Webb v. Arterburn, supra, loc. cit. 379; Phillips v. Griffin, supra, loc. cit. 1354. We have also said under some circumstances "there may be an easement by prescription where the original use was with consent of the servient owner and use as of right has continued for more than ten years." (Citing cases) Loughman v. Couchman, supra, loc. cit. 889.

We have examined the line of cases upon which the statement in Loughman is based to ascertain the "circumstances" to which it has been applied and the type of use which constituted "use as of right". We conclude that it has been applied only in those situations in which the party claiming the easement has expended substantial amounts of labor or money in reliance upon the servient owner's consent or his oral agreement to the use. Almost all are drainage cases and are determined either on the theory of a valid executed oral agreement or on the principle of estoppel. Loughman v. Couchman, 242 Iowa 885, 47 N.W.2d 152, 153; McKeon v. Brammer, 238 Iowa 1113, 29 N.W.2d 518, 521; Morse v. Rhinehart, 195 Iowa 419, 192 N.W. 142; Pascal v. Hynes, 170 Iowa 121, 125, 152 N.W. 26; Hatton v. Cale, 152 Iowa 485, 493, 494, 132 N.W. 1101; Ruthven v. Farmers Co-operative Creamery Co., 140 Iowa 570, 574, 118 N.W. 915; Dorr v. Simmerson, 127 Iowa 551, 553, 103 N.W. 806; Vannest v. Fleming, 79 Iowa 638, 644, 44 N.W. 906, 8 L.R.A. 277, 18 Am. St. Rep. 387; Cook v. Chicago, B. & Q. R. Co., 40 Iowa 451, 455; Beatty v. Gregory, 17 Iowa 109, 115, 85 Am. Dec. 546; Wickersham v. Orr, 9 Iowa 253, 259, 74 Am. Dec. 348.

Wickersham v. Orr, 9 Iowa 253, 260, involved a party wall built on defendant's land under a parol license with his prede-

cessor in title. Defendant had notice of the agreement. We held: "* * * when money or labor has been expended, on the land of another, upon the faith of a promise given by him, the owner shall not assert his legal right to the soil so as to interfere with that use or enjoyment of the building or structure erected as a result of such promise, by the money and labor of the licensee."

Beatty v. Gregory, 17 Iowa 109, 114, involved a parol license to mine lead for one sixth of the mineral as rent. We pointed out the miner expended money and labor sinking shafts and doing all things necessary to mine upon faith of this permission. We said: "* * * can the owner instantaneously and absolutely revoke the license, so as, from that moment forward, treat the miner as a trespasser or intruder? Most clearly not. It would be a shame and reproach to the law, if this could be done."

In Cook v. Chicago, B. & Q. R. Co., 40 Iowa 451, 455, plaintiff's predecessor in title gave the railroad informal written consent to dig a channel across his land straightening a stream. We said: "A mere parol license is revocable at common law. But in some of the states, when the licensee has acted under the authority conferred and incurred expense in the execution of it, equity regards it as an executed contract, and will not permit it to be revoked. * * * This seems to be the law in this state. [Citing Wickersham and Orr] Certainly the rule is fully in accord with the principles of an enlightened jurisprudence. For if a party could grant a license, and stand by until the licensee had incurred great expense preparing to enjoy the right conferred, and then revoke the license and deprive the other of all benefits of his labor and expense, it would, in the language of Beatty v. Gregory, supra, 'be a shame and reproach to the law'."

We held the right to be an easement rather than license because of the written permission.

In Vannest v. Fleming, 79 Iowa 638, 643, 44 N.W. 906, we said: "* * * the ditch referred to in the first count was made upon defendant's land, before he owned it, by the farmer who then owned and cultivated the land. It seems that defendant's

grantor, and the plaintiff or his grantor, were in accord in their views as to the ditch, and its course through the two tracts of land, and, either by express agreement or by mutual and silent acquiescence in the manner pursued by each in the improvement, by drains, of their respective lands, agreed upon the construction of the ditch, and the line it should pursue. Its place of crossing the dividing line of the lands, in this manner, was settled. The law will not permit complaint to be now made of the location and manner of construction of the ditch, after it has been acquiesced in by the parties. The rights of the parties demand that the ditch should remain a settled matter. Good husbandry forbids the changing of ditches. There permanence prevents the washing away of the soil, as well as avoids expenses in the change."

In the same case, page 644, with regard to a second ditch constructed under an oral agreement, we said: "The parties have recognized the ditch, have plowed and farmed in accord with it, and have expended money and labor in the performance of the contract. It can be set aside, disregarded and annulled by neither without the consent of the other. The assent of the defendant to the construction of the ditch on his land is in the nature of a license, which, having been accepted, and the rights conferred assumed and exercised, cannot be set aside or disregarded."

Dorr v. Simmerson, 127 Iowa 551, 554, 103 N.W. 806, involved a drainage ditch. We said: "But in order that all tillable land may be reclaimed, it is indispensable that we recognize the right of the higher proprietor to construct drains, either open or closed, to conduct the water upon his own land into the natural and usual channels which nature has provided, or which have been established by agreement or acquiescence of the parties. This may be a slight step in advance of any we have heretofore taken, but it is a rule well recognized by authority, and especially demanded by our circumstances and conditions."

In Ruthven v. Farmers Co-operative Creamery Co., 140 Iowa 570, 574, 575, 118 N.W. 915, the creamery paid consideration for permission and a license to drain waste from the

creamery through a tile drain it constructed through plaintiff's land into a slough on plaintiff's land. We said:

"That defendant obtained a license to put in the tile, to discharge its sewage therein, and that it expended money on plaintiff's land on the strength thereof and conferred some benefit upon plaintiff in draining the slough at the southeast corner of the land is so well established by the evidence as to be beyond the realm of dispute.

"But plaintiff contends that the license cannot be proved by parol testimony, that the work done was of no benefit to him, and that at any rate the license was revocable at his, plaintiff's, pleasure. None of these propositions can be sustained. Conceding arguendo that the license claimed by defendant was such an interest in land as that the statute of frauds applies, the testimony brings the case within the exception to that statute, for it shows defendant immediately went into possession, and it also paid the purchase price. The licensee not only expended money on its own land, but also upon the land of plaintiff and to some extent, at least, for plaintiff's benefit It is this which distinguishes the case from Jones v. Stover, 131 Iowa 119, and other like cases. *There no expenditure was made for the benefit of the licensor or upon his land.* That a parol license based upon a consideration is valid, and not revocable at pleasure, see Cook v. C., B. & Q. R.R., 40 Iowa 451; Harkness v. Burton, 39 Iowa 104; Vannest v. Fleming, 79 Iowa 638; Spencer v. Andrew, 82 Iowa 14; Hensen v. Creamery Co., 106 Iowa 167. The license in this case was fully executed, and plaintiff is in no position to revoke it. Where executed it becomes irrevocable, for the reason that to permit the licensor to revoke it at pleasure would constitute a fraud upon the licensee. Wickersham v. Orr, 9 Iowa 253; Upton v. Brazier, 17 Iowa 153; Beatty v. Gregory, 17 Iowa 109. * * * Whatever the rule in other States, we are committed to the doctrine above announced, and find no reason for departing from it now."

Hatton v. Cale, 152 Iowa 485, 498, 132 N.W. 1101, involved a drainage ditch constructed with the express oral consent and agreement of defendant's remote grantors. We approved the language of the Vannest case quoted above and then said:

"Again, it is argued for appellant that, at most, plaintiffs obtained nothing more than a parol license to use the ditch which was revocable at the instance of defendant or any of his grantors. Reliance is here placed upon Jones v. Stover, 131 Iowa 119; Friday v. Henah, 113 Iowa 425, and other cases. The difficulty with this proposition is that plaintiffs' grantors secured something more than a parol license. Under the facts disclosed, they not only acquired an easement, but went upon the land now owned by defendant, and there dug a ditch which was to take care of the water on that land as well as that coming across their own. The case is not within the statute of frauds for the reason that the agreement was fully executed and plaintiffs and their grantors immediately began to make use of the easement. The case in this respect is ruled by Vannest v. Fleming, supra; Cook v. Chicago, B. & Q. R. R., 40 Iowa 451; Decorah Co. v. Greer, 49 Iowa 490; Ruthven v. Farmers Co., 140 Iowa 570, which clearly points out the distinction between this case and Jones v. Stover, supra; Wickersham v. Orr, 9 Iowa 253, and other like cases."

In Pascal v. Hynes, 170 Iowa 121, 125, 152 N.W. 26, we said: "The tile drain constructed by Martin Hynes in 1893 carried the water from the pond north of the road into the swale on plaintiffs' land. The drain was laid with the then owner's consent and the surface water carried through it from defendant's land, as well as part of the plaintiffs', with the acquiescence of the latter, the then owner under whom they claim, until 1904, more than ten years, by reason of which defendant has acquired a prescription right to the use of the drain in plaintiffs' land."

In speaking of the 1904 extension of the tile drain we said: "At great expense to defendant's husband, the improvement was made and for the mutual benefit of the parties, and, resting on these considerations, the license is not revocable." (Citing the Ruthven case on page 127 of 170 Iowa)

Morse v. Rhinehart, 195 Iowa 419, 421, 192 N.W. 142, the controversy was the relative rights of the parties to use a tile drain and the right of the servient owner to connect a tile drain into the existing drain constructed by the dominant owner.

We did however say: "We think it clear, under our prior decisions, that appellants have acquired an interest in the nature of an easement across appellee's land which is not subject to revocation by him" and modify the trial court's holding to the extent that it held appellants were mere licensees subject to revocation.

In McKeon v. Brammer, 238 Iowa 1113, 1117, 29 N.W.2d 518, 521, 174 A.L.R. 1229, a tile drain was involved. There was evidence of a gentleman's agreement between plaintiff and defendant's predecessor in title whereby said predecessor gave plaintiff the privilege of attaching a tile line to an existing drainage district line. We said:

"Defendants argue that the most the record shows is that McKeon obtained nothing more than a parol license to use the tile line of their land, which was revocable at the instance of Holliday or any of his grantors. The trial court held the testimony sufficient to establish an easement in favor of plaintiffs. We agree with his conclusion."

We then cited the Morse and Pascal cases and quoted the portion of the Pascal case hereinabove set out. We also said, page 1119 of 238 Iowa: "The trial court holds, and we think rightfully under the evidence, that an easement existed in favor of the McKeon farm. This easement was gained by the prescription before Brammer bought the farm. It was gained during the twelve or thirteen years after the tile line was constructed when the Hollidays, who knew of the existence of the tile line, owned the farm. [The Hollidays are the ones with whom the original agreement was made.]"

We there held a prescriptive right could be acquired although the original entry was permissive and at a time when the parties to the original agreement still owned the land. We recognized this type of easement is based on the principle of estoppel. (Page 1121 of 238 Iowa, page 523 of 29 N.W.2d)

This finding is reaffirmed in Loughman v. Couchman, 242 Iowa 885, 889, 47 N.W.2d 152, 154, which involved a tile drain from a septic tank into defendant's field which he had purchased from a party who had orally agreed to the construction of the drain. We state: "We have frequently held under anal-

ogous circumstances there may be an easement by prescription where the original use was with consent of the servient owner and use as of right has continued for more than ten years."

Many of the cases reviewed above were cited.

It therefore appears we have modified the requirements to establish an easement by prescription in those instances in which the original entry upon the lands of another is under an oral agreement or express consent of the servient owner and the party claiming the easement expends substantial money or labor to promote the claimed use in reliance upon the consent or as consideration for the agreement. In such situations we do not apply the strict rules which will hereinafter be set out.

Returning to the case before us, we conclude it does not come within the cases reviewed above or the rule developed therefrom. Plaintiff's own testimony, which is undisputed, discloses he spent no money or labor in making or improving the roadway. There was no showing of any consideration for an oral contract or any detrimental conduct in reliance on the consent.

In our opinion this case is governed by the general requirements to establish a prescriptive easement by adverse possession or user as a matter of right and is controlled by Phillips v. Griffin, 250 Iowa 1350, 98 N.W.2d 822, 825; Webb v. Arterburn, 246 Iowa 363, 67 N.W.2d 504, 513–515; Roberts v. Walker, 238 Iowa 1330, 30 N.W.2d 314, 317–319; Gerdts v. Mulford, 230 Iowa 647, 298 N.W. 873, 875; Young v. Ducil, 188 Iowa 410, 416, 176 N.W. 272.

The applicable law is summarized in Roberts v. Walker, supra, with appropriate authorities including section 564.1, Code of Iowa:

"The doctrine of adverse possession upon which plaintiff relies is to be taken strictly. There are usually no equities in favor of one who claims property of another by adverse possession and his acts are to be strictly construed. * * * The facts relied upon to establish adverse possession must be strictly proved. They cannot be presumed. The law presumes the possession of land is under the regular title and will not permit such presumption to be overcome by another presumption. * * *

"Mere proof of use of this roadway is not therefore sufficient to establish plaintiff's claim. Such use may have been permissive only. Plaintiff was required to prove also: (1) That he claimed an easement over the roadway in question as his right, and this must be established by evidence independent of its use; and (2) that defendants or their predecessors in title had express notice of such claim of right to use the roadway against their objections. A right that starts permissively and is not claimed as a right independent of permission does not start the running of the statute of limitations." (At pages 1335, 1336 of 238 Iowa, 30 N.W.2d at page 317)

██ "* * * continuance in a use and possession of land which were permissive in their origin constitutes no evidence of gift, nor will such possession, by mere lapse of time, become hostile or adverse to the person under whom it was taken." Casady v. Casady, 184 Iowa 1241, 1249, 169 N.W. 683. 25 Am. Jur.2d 462, Easements and Licenses, sections 54, 55. "But a user permissive in its inception may subsequently ripen into an easement by prescription if the user in fact has become adverse." 25 Am. Jur.2d 463, Easements and Licenses, section 55. We have held such permissive use becomes adverse upon transfer of the servient property in the absence of evidence the continued use was permitted as a mere favor. Loughman v. Couchman, 242 Iowa 885, 47 N.W.2d 152, 154.

██ Here there is no evidence the nature of the use, admittedly permissive in its inception, changed while the servient property was owned by Mrs. Ritchie. There is no evidence upon which it could be determined plaintiff used the right-of-way as a matter of right rather than with permission. The statutory period had not run after the transfer to this defendant. Most of the cases referred to as controlling present a stronger factual situation than presented by plaintiff here. We therefore hold plaintiff failed to establish an easement for right-of-way purposes over defendant's land by prescription.

III. Defendant's counterclaim sought to have an existing fence between the farms of the two parties established as a boundary line. The fence deviated from the section line to follow the meanderings of the creek. There were two counts

in the counterclaim. The first was based on acquiescence in the boundary for a ten-year period as provided in sections 650.1, 650.5, 650.6, and 650.14, of the Code. The second claimed title by adverse possession. The trial court found against counterclaimant on the adverse possession count but made no ruling on the first count. Appellant now relies only on the first count. As there are no findings on the issue of acquiescence, there is nothing for us to review, if we treat the appeal on the counterclaim as an action at law. If we review de novo we, of course, can make our own findings.

This type of action is triable as at law and the judgment of the trial court has the effect of a jury verdict and will be affirmed if there is substantial evidence to support it. Allen v. Melson, 260 Iowa 689, 690, 150 N.W.2d 292, 293. As it is not clear the parties agreed to try the counterclaim as in equity and as appellant seems to treat the appeal as one at law, we reverse and remand Count I of the counterclaim for new trial. It was error when the trial court did not decide the issues raised by this count.

We therefore reverse the trial court on appellant's appeal on the right-of-way issue and reverse and remand for new trial on Count I of the counterclaim.—Reversed and remanded.

All JUSTICES concur except RAWLINGS, J., who takes no part.